**Vicki FREY, Plaintiff–Appellant,**

v.

**Richard J. GANGWISH II,
Defendant–Appellee.**

**No. 91–5616.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 19, 1992.

Decided July 21, 1992.

David S. Sprawls (argued and briefed), Louisville, Ky., for plaintiff-appellant.

Richard J. Gangwish, II (argued and briefed), Erlanger, Ky., for defendant-appellee.

Before: RYAN and SUHRHEINRICH, Circuit Judges; and CHURCHILL, Senior District Judge.[*]

JAMES L. RYAN, Circuit Judge.

This is a debt collection dispute which has become a federal case. The plaintiff, Vicki Frey, appeals from the district court's order of summary judgment for the defendant, Richard J. Gangwish, II. Frey, the original debtor, alleges that Gangwish, the creditor's attorney, violated the Fair

---

[*] The Honorable James P. Churchill, United States District Judge for the Eastern District of Michigan, sitting by designation.

Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692g(a) and 1692e(11), entitling her to an award of actual damages, statutory damages, costs and attorney's fees under 15 U.S.C. § 1692k(a).

We are required to decide whether the notice and disclosure requirements of 15 U.S.C. §§ 1692g(a) and 1692e(11) are required in a letter sent by a debt collector in response to a consumer's failure to make payments as provided in a stipulated judgment. The district court concluded that they were not and granted summary judgment to the defendant. We disagree and therefore reverse the decision of the district court and remand the case for further proceedings.

## I.

Frey incurred a consumer debt to J.C. Penney Company, which she failed to pay. Through its attorney, Richard J. Gangwish, who is the defendant in this case, J.C. Penney initiated a suit to collect the debt. Frey retained the services of an attorney, who negotiated an agreed judgment with J.C. Penney. That judgment was entered in the Jefferson District Court in Kentucky and provided for satisfaction of the debt through monthly payments of twenty dollars.

Frey made regular payments under the judgment from August 1988 until May 1989. She made no further payments in 1989, however, and made only two in 1990. In response to Frey's failure to comply with the terms of the judgment, Gangwish sent her the following letter, advising her of the legal action that could be taken against her:

> Even though this office obtained a Judgment in favor of J.C. Penney Company, Inc. against you in the JEFFERSON DISTRICT Court on June 28, 1988, our records show that you still owe $354.84 on that judgment, plus court costs, and interest which is added every day at 12% per year. At that rate, $500 would grow to $800 in a little less than five years. Under Kentucky law, a judgment is good for up to fifteen years. That means that we have up to fifteen years from June 28, 1988 to garnish wages from any job you have, to attach any monies you might have in any bank account, or to file a foreclosure on any real estate you might own. Needless to say, fifteen years is a long time.

> Our office practice is to re-check employment every year to see if we can issue a garnishment. Even though you may not be working now, we will re-check every year for fifteen years after June 28, 1988 to find out if we can issue a garnishment.

> Naturally, it is in your best interest, and ours, to pay this judgment off as soon as possible. If you would like to make periodic payment arrangements, please call us immediately.

Frey ultimately responded to this letter by filing this lawsuit, alleging that Gangwish's letter violated sections 1692g(a) and 1692e(11) of the FDCPA. The district court referred the case to a magistrate judge, who entered findings of fact and conclusions of law and recommended that Gangwish be granted summary judgment and that Frey's motion for partial judgment be denied. Frey filed exceptions and Gangwish responded. The district court entered judgment following the recommendations of the magistrate judge. Frey appeals.

## II.

Our review of a grant of summary judgment is *de novo*. *EEOC v. University of Detroit*, 904 F.2d 331, 334 (6th Cir.1990). We therefore apply the same standard as applied by the district court. Under Fed. R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This appeal does not involve any factual disputes but concerns solely the district court's conclusions of law regarding the applicability of the FDCPA to Gangwish's conduct in this case.

The Fair Debt Collection Practices Act was enacted in 1977 in response to public perception of the use of unfair and abusive debt collection practices by many debt collectors. The statutory purpose of the act is set forth in 15 U.S.C. § 1692(e):

It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

To achieve this broad remedial purpose, the statute makes violators of its provisions liable for actual damages, statutory damages, costs, and attorney's fees. 15 U.S.C. § 1692k.

Frey argues that Gangwish's post-judgment letter violated two sections of the FDCPA, 15 U.S.C. §§ 1692g(a) and 1692e(11). Gangwish concedes that his letter did not make the disclosures or contain the information required by these sections. He argues, however, that neither section applies to his letter. The district court agreed and granted him summary judgment. We conclude that the letter violated both sections. We address the applicability of each section in turn below.

### A.

#### Section 1692g(a)

██ The language of Section 1692g(a) provides in relevant part:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing....

\*　　\*　　\*　　\*　　\*　　\*

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the

debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector....

15 U.S.C. § 1692g(a).

Although Gangwish had prior communications with Frey's attorney, his post-judgment letter was his first communication with Frey. In addition, the letter was "in connection with the collection of [a] debt." Although the letter was sent to collect on a judgment, the act defines debt to include any obligation, "whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Gangwish's failure to provide validation notice therefore violated this section of the act.

Gangwish offers three reasons why this section should not be applied to his post-judgment letter. First, he suggests that this section does not apply to post-judgment communications with the debtor. Second, he contends that even if the literal language of this section can be construed to apply to his post-judgment letter, the purpose of the section is not furthered by its application to these facts. Finally, he maintains that application of the statute in this case would work a severe injustice upon him. Although there is much common-sense appeal in what Gangwish argues, we, like Gangwish, are bound by the plain language of the act.

By its terms, section 1692g applies to "the initial communication with a consumer in connection with the collection of any debt." It does not distinguish between initial communications that precede judgments and those that follow judgments. Indeed, in spelling out the notice requirements for initial communications, it assumes that an initial communication may follow the entry of a judgment by requir-

ing in subsection (a)(4) that initial communications contain

a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector....

15 U.S.C. § 1692g(a)(4). If this section applied only to pre-judgment communications, it would not require that an initial communication inform the debtor that if she disputes the debt, a copy of any judgment against her involving that debt will be obtained and sent to her. This section therefore clearly applies to initial communications that follow the entry of a judgment.

Gangwish's second argument is that application of this section to the facts of this case does not further the section's purpose of providing validation notice of a debt. The apparent purpose of providing validation notice is to inform the consumer debtor that he is entitled to verification of a debt's validity. In this case, Frey obviously knew that her debt to J.C. Penney was valid. Through her attorney, she negotiated and entered an agreed judgment. She even made payments to the creditor under the terms of that judgment. Gangwish concludes that at this stage of their transactions, there was simply no need for validation notice.

We find this argument unavailing for two reasons. First, the statute requires validation notice in an initial communication with the debtor, regardless of whether validation notice is needed or not. Second, even if Frey knew that the debt was valid, she may have disputed the balance of the debt still owing as represented by Gangwish in his post-judgment letter. She was entitled to receive notice of her right to obtain verification of the balance of her debt, and failure by Gangwish to provide such notice within five days of this initial communication violated section 1692g(a)(3).

Gangwish's final argument is that strict enforcement of the statute in this case will work an injustice on him because Frey was not injured by his failure to provide validation notice. We disagree. Upon remand, Frey will be entitled to recover only her actual damages, if any, and those statutory damages that the district court, in its discretion, finds appropriate. If Gangwish is correct that Frey was not injured by the "technical" violation of the statute, the district court will undoubtedly consider that in the exercise of its discretion. Until the court has exercised its discretion in this regard, however, we are not in a position to review the issue.

### B.

### Section 1692e(11)

■ Frey also complains that Gangwish's post-judgment letter violated section 1692e(11). That section states broadly that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. It then provides a nonexhaustive list of specific conduct that violates this general prohibition, including subsection (11), which refers to

the failure to disclose clearly in all communications made to collect a debt or to obtain information about a consumer, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose.

15 U.S.C. § 1692e(11).

Gangwish's letter was a communication made to collect a debt and therefore violated this subsection because it did not disclose that any information obtained would be used to collect the debt.

Gangwish again argues that this section should not be construed to apply to a post-judgment communication such as his letter, and we must again reject this argument because the plain language of the statute does not allow it. This section applies to "all communications made to collect a debt." As noted, section 1692a(5) defines debt to include any obligation, "whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). The let-

ter to collect on the judgment was therefore a communication to collect a debt and subject to the provisions of this section.

Gangwish maintains, however, that his letter was really a form of follow-up notice and this section should not be construed to apply to a follow-up notice. In this regard, he relies on the Ninth Circuit case of *Pressley v. Capital Credit & Collection Serv.,* 760 F.2d 922 (9th Cir.1985) (per curiam). In *Pressley,* the Ninth Circuit held that a follow-up notice was "not a 'communication' within which the disclosure required by 15 U.S.C. § 1692e(11) must be made." *Id.* at 925. In reaching this conclusion, the court noted the reasoning of an informal advisory opinion of the Federal Trade Commission, which stated in part:

> Where the debtor has already received proper notification of the debt as required by Section 809 of the Act [15 U.S.C. § 1692g] or has been negotiating with debt collector over the terms of the repayment, ... no purpose is served by requiring that every subsequent communication with that debtor contain these disclosures.

*Id.* The court further observed that the legislative history of the FDCPA indicated that its purpose was to protect consumers from abusive practices without imposing unnecessary restrictions on ethical debt collectors. *Id.* The court concluded that requiring a debt collector to make affirmative disclosures in every form of follow-up notice would serve no purpose of the act and would ignore the legislative intent that protection of consumers be balanced against imposing unnecessary restraints on ethical debt collectors. *Id.*

We decline to apply this analysis to the case before us for two reasons. First, we conclude that Gangwish's post-judgment letter was not a form of follow-up notice. In *Pressley,* the court considered a follow-up notice that only demanded a payment as earlier requested. Here, by contrast, Gangwish's letter was his first communication with Frey to collect on the judgment.

It did not follow a previous request for payment of the judgment. Indeed, the only thing that it followed was the judgment itself. As a result, the reasoning of the *Pressley* court for not requiring the disclosures of section 1692e(11) in follow-up notices does not apply to Gangwish's letter.

But even if the *Pressley* reasoning applied, we would reject it as unsound. We agree with the Second Circuit, which has expressly declined to follow the holding of *Pressley.* In *Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22, 26–27 (2d Cir. 1989), the Second Circuit held that follow-up communications are subject to the disclosure requirements of section 1692e(11).[1] In rejecting the reasoning of *Pressley,* the court noted first that the plain language of the statute applies to "all communications." *Id.* at 27. The court also observed that requiring that all communications include the disclosures furthered the purpose of the statute by ensuring "that even if the first notice is not received by the consumer, ... subsequent notices will nonetheless provide the consumer with the requisite disclosures." *Id.* Finally, the court concluded that "even if there were little discernible purpose in repetition, Congress could exercise its legislative judgment to adopt a reasonable margin of safety to insure its remedial goal." *Id.*

We agree with the reasoning of the Second Circuit in *Pipiles* and therefore reject the defendant's argument that the disclosure requirements of section 1692e(11) do not apply to follow-up notices.

## C.

### The Defendant's Remaining Arguments

In addition to his argument that the disputed sections of the FDCPA do not apply to his post-judgment letter to Frey, Gangwish raises two additional arguments. First, he contends that under 15 U.S.C. § 1692k(c), he should not be held liable because he has shown by a preponderance of evidence that any violation he may have committed was not intentional and resulted

---

1. The Fourth Circuit has recently joined the Second Circuit in holding that follow-up notices are subject to the disclosure requirements of section 1692e(11). *Carroll v. Wolpoff & Abramson,* 961 F.2d 459, 461 (4th Cir.1992), *petition for cert. filed,* (U.S. June 24, 1992) (No. 91–2057).

from a bona fide error. Second, he argues that he should be granted summary judgment because Frey has suffered no damages.

Both of these issues involve questions of fact that the district court never reached because it granted summary judgment. As a result, we leave these issues for the district court to address on remand.

### III.

The Fair Debt Collection Practices Act is an extraordinarily broad statute. Congress addressed itself to what it considered to be a widespread problem, and to remedy that problem it crafted a broad statute. Gangwish would have us ignore this fact and read an exception into the statute that is nowhere to be found in its text. This we cannot do, even though the exception he would have us adopt may be an eminently sensible one. We must enforce this statute as Congress has written it.

As written, sections 1692g(a) and 1692e(11) apply to Gangwish's post-judgment letter. As a result, his failure to include the notice and disclosures required by those sections constitutes violations of those sections as a matter of law.

We therefore REVERSE the judgment of the district court and REMAND the case for further proceedings consistent with this opinion.

SUHRHEINRICH, Circuit Judge, dissenting.

Congress enacted the Fair Debt Collection Practices ("FDCPA"), 15 U.S.C. § 1692 et seq., "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses." Id. at § 1692(e). Under the aegis of the plain meaning rule, the majority interprets the FDCPA in a manner that, in my view, not only incorrectly applies that doctrine of statutory construction, but also imposes severe and unnecessary burdens on ethical debt collectors.

The majority first turns its plain meaning analysis on the FDCPA's validation notice requirement, 15 U.S.C. § 1692e(11). This section compels debt collectors to include a validation notice in any "initial communication with a consumer in connection with the collection of any debt." Id. The majority fails to observe, however, that Gangwish's letter cannot be an "initial communication" with Frey.

The majority attempts to circumvent this dilemma by observing that, "[a]lthough Gangwish had prior communications with Frey's attorney, his post-judgment letter was his first communication with Frey." In fact, the record is silent as to whether this letter was the initial communication with Frey. Presumably, Frey was prompted to seek and secure counsel for her 1987 debt to J.C. Penny Co. by some notice that she was in arrears. Thus, it stands to reason that there is a prior communication in this case between Gangwish and Frey than the one presently subject to judicial scrutiny. Frey has failed to establish the content of this communication.

More importantly, even if we assume that Frey sought counsel without prompting, Gangwish's prior communications with Frey's attorney preclude a finding that the post-judgment letter was an initial communication. An attorney is both a fiduciary to and an agent of his client. As a result, conveying notice or knowledge to an attorney is regarded as equivalent to conveying notice or knowledge to the client. The Supreme Court has long held that "each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" Link v. Wabash R.R. Co., 370 U.S. 626, 634, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962) (quoting, Smith v. Ayer, 101 U.S. 320, 326, 25 L.Ed. 955 (1879)). The plain language of the FDCPA expresses no intention to abrogate this general rule, and I believe that the majority's, at least implicit, decision to do so is unwise.

The facts of this case, which the majority largely ignores, further compel this conclu-

sion. Gangwish's letter was sent approximately four years after the debt was incurred. During this period, there were lengthy negotiations between Frey's attorney and her creditor. These negotiations resulted in a judgment *to which Frey agreed and on which she made twelve installment payments*. Finally, a garnishment was issued from the district court, some two years after the agreed judgment and several attempts to secure payment. At all relevant times, Frey continued to be represented by counsel. To require a validation notice after a closely negotiated and ultimately agreed upon judgment would serve no purpose; to regard Gangwish's letter as an initial communication is more than the plain meaning of the statute or the facts in this case will bear.

The majority also believes that Gangwish's letter violated the FDCPA's disclosure requirement, 15 U.S.C. § 1692e(11). I disagree. The relevant portion of this letter is its concluding paragraph, which reads, "Naturally it is in your best interest, and ours, to pay this judgment off as soon as possible. If you would like to make periodic payment arrangements please call us immediately." Section 1692e(11) requires that the debt collector "disclose" that he "is attempting to collect a debt and that any information obtained will be used for the purpose." Although Gangwish's letter did not contain these exact words, the statute does not prescribe any specific formulation for the disclosure. *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 26 (2d Cir.1989); *Emanuel v. American Credit Exch.*, 870 F.2d 805, 808 (2d Cir.1989). Even under the "least sophisticated consumer" standard *see Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1028–29 (6th Cir.1992), (applying the standard to alleged violation of 15 U.S.C. § 1692g(a)(3)); I believe that the letter adequately informed Frey that Gangwish was seeking collection of a debt *concededly owed* by plaintiff. A debtor in Frey's position would clearly be aware of the nature and scope of her debt and her rights. Here the communication requested contact from the debtor in the context of making arrangements to pay off the judgment. I therefore would hold that this communication clearly, although implicitly, discloses the information required by section 1692e(11). Against the backdrop of the parties' extensive prior dealings and the context of Gangwish's letter itself, any other conclusion is absurd.

Further, the facts clearly reveal that even if there were a technical violation of the statute, the case should never have been brought. Frey does not dispute the debt that Gangwish is seeking to collect, does not assert that the letter was harassing, misleading, or abusive, and does not claim to have been harmed in any way by the letter. Moreover, at oral argument, Frey's attorney was unable to articulate any damage to Frey as a result of the violation. The only injury which flows from the alleged violation here is the waste of valuable, finite judicial resources. The pointless exercise of such litigation may also have a damaging secondary effect on debtors. In order to avoid technical noncompliance with statutory requirements, creditors may well decide to withhold necessary informative communication.

The suspicion raised in my mind is whether the UAW Legal Services Plan, of whom this statute seems to be a favorite,[2] is more interested in the mandatory statutory award of attorney's fees than they are in protecting the rights of debtors against dishonest debt collectors. Were I the district judge in this matter, I would contemplate imposing Rule 11 sanctions. Since I am not, I can only advise that on remand, the district judge remain cognizant of the absence of damages and of the true tenor of the longstanding relationship between these parties when statutory damages are sought. *See Pipiles*, 886 F.2d at 28; *Emanuel*, 870 F.2d at 809. Finally, I caution the UAW Legal Services Plan to choose battles worth fighting.

---

**2.** This court found 38 cases under this statute reported or otherwise available on electronic database filed by various UAW Legal Services offices as of March 28, 1988.