Cynthia LEE, Plaintiff–Appellant,

v.

THOMAS & THOMAS, Timothy K. Gibson, Defendants–Appellees.

No. 94–4274.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 25, 1996.

Decided March 24, 1997.

Jason D. Fregeau (argued and briefed), Yellow Springs, OH, for plaintiff–appellant.

Michael Joseph Bergmann (argued and briefed), Benjamin, Yocum & Heather, Cincinnati, OH, for defendants–appellees.

Before: NELSON and BATCHELDER, Circuit Judges; KATZ, District Judge.*

DAVID A. NELSON, Circuit Judge.

This is a Fair Debt Collection Practices Act case in which the plaintiff appeals from an attorney fee award that she contends was inadequate.

The magistrate judge who issued the award found, expressly or implicitly, that the defendants' violation of the Act was purely technical in nature; that the plaintiff had suffered no actual damages; that fee considerations led to the rejection of an offer to confess judgment in an amount which would have paid all statutory damages that the plaintiff had any hope of recovering, plus a reasonable estimate of accrued attorney fees;[1] and that it was unreasonable for the plaintiff's attorney to expend further time and effort on the case after receipt of the offer to confess judgment.

We conclude that there was no reversible error in the magistrate's factual findings or legal analysis. There was an error in the dollar amount of the award, but the error benefitted the plaintiff, not the defendants. The defendants not having cross-appealed, the award will be affirmed.

**I**

The plaintiff, Cynthia Lee, incurred a $260 debt to a company called Retinal Consultants, Inc. Ms. Lee experienced difficulty in paying this and other bills, a lengthy illness having kept her from working, and her creditors agreed to accept payment in installments.

Ms. Lee sometimes fell behind in making the agreed installment payments. By March of 1993 the balance due Retinal Consultants had been reduced to $36.42, but Ms. Lee was apparently slow in making her payment that month.

---

* The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

1. The plaintiff's attorney refused to let the defendants know the actual amount of the accrued fees.

On March 31, 1993, defendant Thomas & Thomas—a Cincinnati law firm that had been representing Retinal Consultants in its collection efforts—sent Ms. Lee a two-sentence letter that was eventually to precipitate the filing of this lawsuit. Prepared on the Thomas & Thomas letterhead, and prefaced with a reference to Retinal Consultants, $36.42, and a file number, the letter read as follows:

"Per our recent phone conversation, we had expected your check by now. Since it has not arrived as yet, we are enclosing a self-addressed envelope for your remittance of $20.00."

The letter was signed for Thomas & Thomas by an individual identified as "Timothy K. Gibson, Legal Assistant."

Under § 807 of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e, a debt collector such as Thomas & Thomas "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." The section goes on to list a number of different types of conduct falling within this prohibition. Among them is "the failure to disclose clearly in all communications made to collect a debt or to obtain information about a consumer, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C. § 1692e(11) (1982).

On October 29, 1993, Attorney Jason David Fregeau, who said that he represented Ms. Lee, wrote the legal assistant at Thomas & Thomas to complain that the March 31 letter—and a similar letter sent some months earlier, when the outstanding balance had been $151.78—contained "serious violations" of 15 U.S.C. § 1692e(11). (It is worth mentioning here that the debt had been paid in full by the time Mr. Fregeau appeared on the scene, and there has never been any suggestion that Ms. Lee did not owe the money.)

Although the March 31 collection letter had not asked Ms. Lee for any "information about a consumer," other than the information that would be contained in a $20 check, and although one might have thought that the letter disclosed clearly enough that Thomas & Thomas was attempting to collect a debt, Attorney Fregeau suggested that the letter was in violation of § 1692e(11) because it failed to state *in haec verba* that "the debt collector is attempting to collect a debt and . . . any information obtained will be used for that purpose." In this connection Mr. Fregeau cited two appellate court decisions, *Frey v. Gangwish,* 970 F.2d 1516 (6th Cir. 1992), and *Carroll v. Wolpoff & Abramson,* 961 F.2d 459 (4th Cir.), *cert. denied,* 506 U.S. 905, 113 S.Ct. 298, 121 L.Ed.2d 222 (1992).

After explaining why he thought there had been a violation of the Fair Debt Collection Practices Act, Mr. Fregeau went on to propose a settlement:

"This letter is meant to give you and your firm the opportunity to resolve this matter without litigation. Should you and your firm desire a settlement, please remit $2000.00, payable to me, before November 19, 1993. Otherwise, I have been instructed by Ms. Lee to file suit in federal court in Dayton, Ohio, on that date."

Thomas & Thomas declined to pay the $2,000, noting that although the firm's collection letters had subsequently been changed to incorporate a notice tracking the statutory language, it was still open to debate whether the March 31 letter had been in violation of the statute. Mr. Fregeau evidently remained of the view that a violation had occurred. On November 18, 1993, he commenced the present action by filing a complaint on behalf of Ms. Lee against Thomas & Thomas and its legal assistant, Timothy K. Gibson. (Mr. Fregeau has said that he was paid a non-refundable retainer of $25 and that the case was otherwise taken on a contingency basis.)

The complaint, which was subsequently amended to delete some rather puzzling references to a "Defendant Ross" and a "Defendant Main Accounts,"[2] averred that like the earlier collection letter—as to which the com-

---

2. The magistrate judge noted in his attorney fee decision that "Plaintiff's counsel has filed 54 cases in this Court since January 1, 1993, all or most of them being cases under the Fair Debt Collection Practices Act." Perhaps Ross and Main Accounts were parties to another lawsuit filed under the Act.

plaint acknowledged the statute of limitations had run—the March 31 letter violated 15 U.S.C. § 1692e(11) by reason of its failure to give the required notice. While not asserting that Ms. Lee had suffered any actual damages, the complaint sought a maximum of $1000 in statutory damages under 15 U.S.C. § 1692k, plus reasonable attorney fees and costs under the same statutory section.[3]

In addition to asserting a claim under the federal statute, the complaint introduced a claim based on the Ohio Consumer Sales Practices Act. In this connection the complaint cited Ohio Rev.Code §§ 1345.02 and 1345.03. (Neither of these sections appears, on its face, to have any application to the facts complained of here; as far as we know, however, Mr. Fregeau was never asked to explain the theory on which the Ohio claim rested.) Pursuant to Ohio Rev.Code § 1345.09, the complaint sought statutory damages of $200 for the alleged violation of state law. The total damages claimed thus came to no more than $1,200.

A few days after filing the lawsuit, Mr. Fregeau advised Thomas & Thomas that the settlement demand had increased to $4,000.[4] In late January of 1994, about two weeks after the defendants had been served with process, the defendants' lawyer, Michael J. Bergmann, made a settlement offer of $750. The offer was rejected. On or about February 23, 1994, Mr. Bergmann offered $1,250 and hinted that he might go as high as $1,750. Mr. Fregeau replied that the case could not be settled for anything close to $1,750. He reiterated that even though his client was claiming only statutory damages, as opposed to actual damages, she wanted $4,000.

Mr. Bergmann requested a breakdown of the dollar amounts claimed for (a) damages, (b) court costs, and (c) attorney fees. With respect to the fee component of Ms. Lee's claim, Mr. Bergmann asked for the number of attorney-hours expended on the case and the hourly rate being claimed. Mr. Fregeau refused to give this information.[5]

Pointing out to Mr. Fregeau that the statutory damages were fixed, Mr. Bergmann remarked that the attorney fees seemed to be "the engine which was powering the case." Mr. Fregeau's response, according to unchallenged evidence accepted by the magistrate judge as true, was, "Yes, that's right."

On the day following this conversation, Mr. Fregeau advised Mr. Bergmann that the settlement demand had gone up to $5,000. Mr. Bergmann then prepared and signed a written offer of judgment in which, pursuant to Rule 68, Fed.R.Civ.P., the defendants offered to allow judgment to be taken against them for $2,000. The offer of judgment was tendered to Mr. Fregeau on March 3, 1994. As of that time, insofar as the district court's docket sheet discloses, there had been relatively little activity in the case.

If the March 3 offer of judgment had been accepted, Ms. Lee could have recovered damages of up to $1,200 (the statutory maximum, by her lawyer's own account) and at least $800 would have been available for court costs and attorney fees. The offer was rejected, however, and the litigation went on for several more months. During that time the parties filed additional pleadings and

---

**3.** Section 1692k provides that any debt collector who fails to comply with the Act with respect to any person shall be liable to such person for any actual damage that may result, plus "such additional damages as the court may allow, but not exceeding $1,000," plus court costs and "a reasonable attorney's fee as determined by the court."

**4.** Mr. Fregeau's litigation strategy appears to have been inspired by an article in the American Bar Association Journal about a New Mexico lawyer named Richard J. Rubin. The article reported, among other things, that

"Rubin makes no apologies for his tactics, despite his own admission that he relies on technical violations of the law to bring a case, makes arbitrary settlement demands irrespective of damages and earns far more in attorneys' fees than his clients are entitled to collect." ABA Journal, January 1993, at 28.

**5.** When the magistrate judge asked him why, Mr. Fregeau replied as follows:

"Because, Your Honor, I have a duty to zealously advocate for my client and I have a duty not to divulge that information. I have a duty to negotiate a settlement. If I tell him this number ... that may not settle that. That would be giving away my client's position."

briefs of various kinds, and there was limited discovery. By consent of the parties, the matter was referred to a magistrate judge for final disposition.

Late in May of 1994 the defendants made a new offer of judgment. This time the defendants proposed to confess judgment for $1,200 plus whatever attorney fees and costs the court determined the plaintiff to be entitled to. Ms. Lee accepted this offer, and the judgment was entered on June 2.

On June 15, 1994, Mr. Fregeau filed an application on Ms. Lee's behalf for attorney fees and costs totaling $8,279.79. Affidavits and briefs were filed on both sides. By October 31, 1994, when the fee application came on for oral argument before the magistrate judge, the total amount sought had risen to $12,759.

The magistrate filed a decision and order in which he found, among other things, that the hourly rate claimed as the value of Mr. Fregeau's time (a rate of $100) was too high; that the reasonable rate was $85 per hour; that the most the plaintiff could ever have expected to recover in damages was $1,200, since she had no actual damages; and that Mr. Fregeau's expenditure of time after March 3, 1994—the date of the defendants' offer to confess judgment for $2,000—constituted "economic waste."

Judgment was entered in favor of the plaintiff for attorney fees and costs totaling $1,106.85. This figure allowed nothing for the hours charged after March 3. Mr. Fregeau has perfected a timely appeal on behalf of Ms. Lee. While she is the nominal appellant, he is obviously the real party in interest.

## II

The main purpose of the Fair Debt Collection Practices Act was to "eliminate abusive debt collection practices...." 15 U.S.C. § 1692(e). *Cf. Frey,* 970 F.2d at 1518. The defendants' March 31 letter was certainly not "abusive" in any normal sense. If we were being asked to determine the legality of the letter, we are frank to say, it is not altogether clear to us that *Frey* would compel an answer favorable to the plaintiff.

What is clear to us—just as it was clear to the plaintiff's lawyer—is that if the March 31 letter violated § 1692e(11) at all, the violation was a purely technical one. As Mr. Fregeau told the magistrate judge at oral argument, "Your Honor, it's a technical violation. It's not a big deal...."

Because the alleged violation was "not a big deal," it might well have seemed improbable to Mr. Fregeau and Ms. Lee that the maximum damages would be allowed if the court were to find that the statute had technically been violated. Because there was no claim of actual damages, in any event, Mr. Fregeau and his client necessarily realized that under the federal statute there could not be a damage award exceeding $1,000. As to the Ohio statute, only two possibilities were presented: Ms. Lee could recover nothing, or she could recover statutory damages of $200.

Against this background—and regardless of what the terms of Mr. Fregeau's contingent fee contract may have been—it seems to us that if the offer to confess judgment for $2,000 had been accepted on March 3, 1994, the strong likelihood is that the major share of the $2,000 would have gone to Mr. Fregeau. Be that as it may, Mr. Fregeau evidently wanted a larger fee than a $2,000 judgment would have yielded him.

The statute authorizes nothing more than a fee determined by the court to be "reasonable," of course. If on March 3, 1994, the defendants were offering to confess judgment for everything to which Ms. Lee could reasonably be considered entitled, including an attorney fee that appeared reasonable in light of the circumstances existing at the time, the magistrate judge evidently thought that it would be unreasonable for the lawyer to keep his meter running. We think so too. And if it was unreasonable for Mr. Fregeau to continue performing legal services after March 3, any fee for services rendered after March 3 would clearly be unreasonable.

Mr. Fregeau argues that the amount of recoverable statutory damages is irrelevant. As we have already seen, however, it is far from irrelevant under the facts presented here. By subtracting the amount of recoverable damages and costs from the amount of

the March 3 offer, one can determine the amount of the fee that would have been available to Mr. Fregeau for his services to the time of the offer—and if the fee available on March 3 was reasonable, the larger fee claimed subsequently could not be reasonable.

Was the fee component of the defendants' March 3 offer reasonable? It was obviously within the ball park, at least—and because Mr. Fregeau placed the defendants at an unreasonable disadvantage by refusing to disclose his hourly rate and his accumulated time, we should be reluctant to penalize the defendants for not having offered more.[6]

Contrary to a suggestion advanced by the plaintiff on appeal, there is no mystery as to how the magistrate judge arrived at the dollar amount of his award. Based on materials presented by Mr. Fregeau in his fee application, the defendants prepared and submitted to the magistrate judge a chart showing, among other things, what the fees and costs would have come to on March 3, 1994, if Mr. Fregeau's time had been billed at the $100–per–hour rate proposed in the application. The total was $1,106.85. The accuracy of the defendants' arithmetic has never been challenged, and the final judgment awarded attorney fees and costs in the amount of exactly $1,106.85. The magistrate judge made no reduction in the number of attorney-hours claimed to have been expended on the plaintiff's behalf through March 3, 1994, and he obviously made no reduction in the hourly rate that the plaintiff claimed should be applied to those hours.

The magistrate judge intended, as his decision makes clear, that the hourly rate be reduced from $100 to $85. Because this

intent was not carried out, the plaintiff now complains that "there is no clear calculation of a lodestar...." [7] But there was a clear calculation of a lodestar, and that calculation incorporated the higher hourly rate proposed by the plaintiff herself. In the absence of a cross-appeal by the defendants, we are not prepared to find an abuse of discretion on the basis of an error that may have overcompensated the plaintiff.

The plaintiff goes on to argue that the reason the magistrate judge refused to allow a fee for work performed after March 3, 1994, was that he erroneously concluded that enforcement of the federal statute would yield no "significant gain to the public interest." But the magistrate judge did not use the quoted language to suggest that the statute should not be enforced. What he was suggesting, rather, was that the public interest may be taken into account in determining the extent to which a claim for attorney fees meets the statutory test of reasonableness. The magistrate judge was saying, in other words, that insofar as legal work for which a fee is being sought represents "economic waste," the fee request is unreasonable.

In this, we believe, the magistrate judge was clearly correct. Waste is not in the public interest. The Congress that passed the Fair Debt Collection Practices Act in 1977 could hardly have wished to reward lawyers for doing nonproductive work and wasting their adversaries' time and the time of the courts as well. In directing the courts to award "reasonable" fees, on the contrary, Congress undoubtedly wished to ensure that the lawyer representing a successful plaintiff would receive a reasonable fee for work rea-

---

**6.** If the negotiations were being conducted today, we suspect that Mr. Fregeau might be less reticent about the components of his claim. Effective February 3, 1997, the Supreme Court of Ohio issued a "Statement on Professionalism, a Lawyer's Creed, and a Lawyer's Aspirational Ideals" addressing the Court's concern over a developing tendency among lawyers to de-emphasize the historic concept of legal practice "as a high calling dedicated to the service of clients and the public good," while emphasizing "commercialism" and "financial rewards." 77 Ohio St. Bar Report, No. 7, xli, February 17, 1997. The "aspirational ideals" endorsed by the Supreme Court in this connection include *"economical* achieve-

ment of all client objectives," avoidance of "nonessential litigation," and exploration of "the possibilities of settlement of all litigated matters." *Id.* at xlii and xliii (emphasis supplied). These ideals would be ill-served, obviously, by suing to recover a reasonable attorney fee and then refusing, in settlement negotiations, to disclose information essential to the calculation of such a fee.

**7.** A "lodestar," in this context, is the product of reasonably expended attorney-hours and a reasonable hourly rate. See *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

sonably found necessary—nothing less, and nothing more.

We are strengthened in this conclusion by *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), a case arising under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. That statute, enacted a year before the statute at issue here, authorized the allowance of "a reasonable attorney's fee" as part of the prevailing party's recoverable costs.[8] Citing legislative history, the *Hensley* Court took the statutory language to mean, among other things, that "[t]he district court should exclude from [the] initial fee calculation hours that were not 'reasonably expended.' " *Id.* at 434, 103 S.Ct. at 1940. That is precisely what the magistrate judge did here; he excluded the post-March 3 hours from the fee calculation because he determined that those hours were not "reasonably expended."

*Tolentino v. Friedman,* 46 F.3d 645 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995), on which the plaintiff relies, does not suggest that the lawyer for a party who prevails on a claim under the Fair Debt Collection Practices Act ought to be compensated for time not reasonably expended. Congress intended "to encourage able counsel to undertake FDCPA cases," the Seventh Circuit noted in *Tolentino,* and thus "it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases." *Id.* at 652. We agree. But able counsel should aspire to achieve their clients' objectives economically (see the Ohio Supreme Court's statement on professionalism, etc., cited at note 6, *supra* ), and counsel should not expect to reap financial rewards for prolonging litigation unnecessarily.

"A reasonable fee," as we have observed elsewhere, "is one that is adequate to attract competent counsel, but [does] not produce windfalls to attorneys." *Hadix v. Johnson,* 65 F.3d 532, 535 (6th Cir.1995) (quoting *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984) (internal

quotes and ellipses omitted)): In the case at bar the magistrate judge determined that Attorney Fregeau's post-March 3 hours were not reasonably expended and that inclusion of those hours in the fee calculation would give the attorney an unjustified windfall. We think that the magistrate judge could have come to no other conclusion.

**AFFIRMED.**

---

8. While allowance of a reasonable fee is discretionary under the civil rights act and mandatory under the debt collection act, the reasonableness test applies under both statutes. The reasonableness of the fee is certainly no less important where the allowance is mandatory than where it is discretionary.