Sharon M. MILLER, Plaintiff,

v.

**MIDPOINT RESOLUTION GROUP, LLC, et al., Defendants.**

No. 07–CV–0310(M).

United States District Court,
W.D. New York.

April 9, 2009.

Kenneth R. Hiller, Law Offices of Kenneth Hiller, Amherst, NY, for Plaintiff.

Peter A. Muth, Hodgson Russ, LLP, Buffalo, NY, for Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JEREMIAH J. McCARTHY, United States Magistrate Judge.

Plaintiff commenced this action seeking to recover for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, ("FDCPA") by defendant Midpoint Resolution Group, LLC ("Midpoint") and its employee, David Constantine (Dkt. #1).[1] The case was initially

---

1. The parties agree that the name "David Constantine" was a pseudonym used by Midpoint's employee, Benito Matthews (Dkt. #12–2, ¶10; Dkt. #18, ¶1), who will be referred to in this opinion as Constantine. The complaint against this defendant has been dismissed for lack of service (Dkt. #33).

referred to me by Hon. Richard J. Arcara to conduct "all pre-trial matters," including "hearing and disposition of all non-dispositive motions" and to "hear and report upon dispositive motions" (Dkt. # 5).

In a Report and Recommendation dated December 11, 2008 (Dkt. # 19), I recommended that plaintiff's motion for partial summary judgment as to liability (Dkt. # 12) be granted, since Midpoint did not oppose that relief (Dkt. # 18). My Report and Recommendation was subsequently adopted by Judge Arcara (Dkt. # 20), and the parties thereafter consented to have me determine plaintiff's claim for statutory and actual damages, as well as attorney's fees (Dkt. ## 23, 24).

## BACKGROUND

Plaintiff alleges, *inter alia*, that Midpoint, through Mr. Constantine, made false threats, submitted unauthorized electronic debits to plaintiff's bank, and threatened plaintiff with criminal prosecution in violation of 15 U.S.C. §§ 1692c(a)(2), 1692e, 1692e(4), 1692e(5), 1692e(7), 1692e(10), 1692e(11), 1692f, 1692c(a)(1), and 1692f(2), and 1692f(4) (Dkt. # 1, ¶¶ 16–30, 33). She further alleges that as a result of this conduct she has suffered damages, including emotional distress (*Id.*, ¶ 34). She seeks actual and statutory damages, as well as attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(1), (2)(A) and (3).

## FINDINGS OF FACT

A bench trial was held before me on March 16, 2009, at which plaintiff and her boyfriend Donald Sherman testified (Dkt. # 25). These Findings of Fact are based upon my contemporaneous notes from the bench trial (neither party requested a transcript), as well as upon the parties' submissions, including plaintiff's Statement of Facts in support of her motion for summary judgment (Dkt. # 12–2, ¶ 1–17), which Midpoint conceded to be "generally accurate". Midpoint's Statement of Facts (Dkt. # 18), ¶ 1.

Plaintiff Sharon Miller is 51 years old, with a 12th grade education. In March 2007, when the incidents which are the subject of this litigation began, she lived in Newfane with her son and her boyfriend, Donald Sherman, in a home which he owned. At that time, her sole source of income was Workers' Compensation benefits of approximately $194 per week, which she received as a result of a back injury which she sustained in 2001. She had incurred credit card debts, including a debt with HSBC Bank of approximately $2,000. The HSBC debt was subsequently assigned to PCI, Inc.

On March 20, 2007 she received a telephone call from an individual who identified himself as David Constantine. Although he did not initially identify his employer, she subsequently learned that he worked for Midpoint. Constantine told her that she was behind in her payments to PCI, and asked her if she could get a bank loan. She told him no, because she was not working at the time. He insisted that she attempt to do so. She gave him her bank account number, and told him that he could debit the account only if she notified him that she had obtained a loan. She contacted Mark Rupert, the manager at Ontario Shores Credit Union, but was unable to obtain a loan.

Nevertheless, on April 1, 2007 Constantine submitted two checks of $503 each, drawn on plaintiff's account at Ontario Shores. When they were returned for insufficient funds, he called her on April 9, 2007 and told her she had committed a felony by allowing him to withdraw from an account with insufficient funds. Although he did not directly threaten to have her imprisoned, he told her that "they" could seize her house, her vehicle (she co-

owned a 2000 Dodge Ram pickup with Donald Sherman) and driver's license. She was terrified, believing that she had committed a felony and could go to jail.

During the April 9 conversation, plaintiff authorized Constantine to make two $503 debits from her account, believing that her income tax refund would cover it. However, there were insufficient funds to cover those debits as well (moreover, her bank records (defendant's Ex. 30) show that during the month of April 2007, plaintiff herself bounced three checks from her account). Constantine called her again on April 23, 2007 and told her that "they" could place a lien on her vehicle and garnish 15–20% of her wages.

Constantine's calls caused plaintiff to suffer "panic attacks", with a sensation of a racing heart "pounding out of her chest". She also felt nauseous and shaky. She had experienced occasional panic attacks since 1984, caused by stress. She was first prescribed with Xanax for those attacks in 1986. In 2004 her physician, Dr. Frederick Piwko, prescribed .5 mg Xanax up to 3 times per day, as needed. However, she claimed that after receiving Constantine's calls she upped her dosage of Xanax to 1 mg. She also claimed that her extreme panic attacks lasted 6–8 weeks, with each episode lasting 10–15 minutes. They affected her ability to do housework, and the stress and drugs made her tired.

Dr. Piwko's records indicate that from 2004–2006 plaintiff was frequently treated for anxiety, depression, sleeplessness, heart palpitations and/or panic attacks, for which she was prescribed Xanax, Lexapro, Effexor and/or Zoloft (*see* defendant's Exs. 2, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20). However, her Xanax prescriptions dated May 4 and August 31, 2007 (defendant's Exs. 28, 29) remained at her previous dosage level of .5 mg., and she did not see Dr. Piwko in 2007 until October 12, at which time she stated that her anxiety was increasing due to the breakup of her marriage, with no mention of Constantine or his calls (defendant's Ex. 21).

Moreover, Mr. Hiller's records indicate that he met with plaintiff on April 13, 2007 and they agreed to commence the litigation at that time. Declaration of Kenneth R. Hiller (Dkt. # 31–3), ¶ 13: "4/13/07 Initial meeting with client. . . . Discuss impact of calls on her personally. Discuss potential witnesses. Explain basics of the FDCPA. Decide to initiate lawsuit on her behalf. Discuss terms [of] representation. Schedule follow up appointment to review additional evidence with client and to start preparing suit."

## CONCLUSIONS OF LAW

### A. Actual Damages

■ "Courts generally award actual damages ranging from $100.00 to $5000.00 to debtors whose creditors violated the FDCPA." *Milton v. Rosicki, Rosicki & Associates, P.C.*, 2007 WL 2262893, *5 (E.D.N.Y.2007). In *Donahue v. NFS, Inc.*, 781 F.Supp. 188, 193, 194 (W.D.N.Y.1991), Judge Skretny awarded plaintiff $100 in actual damages, reasoning that although the plaintiff had clearly "suffered some quantum of mental or physical distress stemming in part from the conduct of these defendants", he had "simply failed to show . . . how much of plaintiff's claimed damages are attributable to the defendants' conduct as opposed to the conduct of others".

■ In this case, it appears that many of plaintiff's emotional issues predated her dealings with Constantine, and the objective medical evidence in support of her claim is slim. Furthermore, I give little credence to any claim by plaintiff that she suffered emotional trauma from Constantine's actions after her April 13, 2007 meeting with Mr. Hiller. From that point forward, her efforts were focused upon the litigation, as evidenced by the fact that she

prepared tapes of her conversations with Constantine for Mr. Hiller's review (*see* Hiller Declaration (Dkt. # 31 –3), ¶ 13, time entries for April 13 and 26, 2007).

 Nevertheless, I credit plaintiff's testimony that she did suffer *some* emotional distress as a result of Constantine's (and therefore Midpoint's) violations of the FDCPA. "When the emotional distress alleged to have been suffered is the sort that would be experienced by reasonable people under the circumstances, some damage, even if merely nominal damage, can be presumed. . . . The extent of plaintiff's injury can be proved by plaintiff's testimony alone". *In re Baker,* 18 B.R. 243, 245 (Bk.W.D.N.Y.1982).

Accordingly, I find that plaintiff is entitled to $500 in actual damages.

### B. Statutory Damages

██ "The maximum amount of statutory damages under the FDCPA is $1,000 per action or proceeding, not per statutory violation. . . . When determining the appropriate amount of liability in an individual action, courts must consider 'the frequency and persistence of such noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional.' " *Cole v. Truelogic Financial Corp.,* 2009 WL 261428, *2 (W.D.N.Y.2009) (Skretny, J.) (awarding $500 in statutory damages for a single intentional violation of the Act).

██ In this case, plaintiff's unopposed motion for partial summary judgment has established that there were multiple violations of the FDCPA, and Midpoint con-

sented (Dkt. # 18) to the dismissal of its "bona fide error" defense under 15 U.S.C. § 1692k(c). Therefore, I conclude that an award of statutory damages in the amount of $1,000 is warranted.

### C. Attorney's Fees

██ Once a violation of the FDCPA has been found, an award of costs and attorney's fees is mandatory. *Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22, 28 (2d Cir.1989) ("because the FDCPA was violated . . . the statute requires the award of costs and reasonable attorney's fees"); *Cole, supra,* *3.

Plaintiff has moved for an award of fees and costs in the amount of $18,045.50 (Dkt. # 31). Midpoint's counsel states that "those charges are reasonable", and that he "does not challenge the attorney's fees incurred by Plaintiff's counsel in litigating this matter . . . or the request that those attorney's fees be added to the Plaintiff's statutory damages". Declaration of Peter A. Muth (Dkt. # 32), ¶¶ 2, 4.

██ However, Midpoint's concession does not relieve me of the obligation to determine for myself the reasonableness of plaintiff's fee request, because the Act provides for an award of "a reasonable attorney's fee *as determined by the court* ". 15 U.S.C. § 1692k(a)(3) (emphasis added).[2] "That successful plaintiffs are entitled to a fee award under the FDCPA does not mean, however, that they are entitled to the amount requested; they are entitled to what is reasonable under the circumstances." *French v. Corporate Receivables, Inc.,* 489 F.3d 402, 404 (1st Cir. 2007).

---

**2.** "Although Plaintiff's motion for attorney fees is unopposed, the Court is not relieved of its duty of making sure that the amount requested by Plaintiff is reasonable." *Michel–Ramos v. Arroyo–Santiago,* 493 F.Supp.2d 249, 253 (D.Puerto Rico 2007) (claim under 42 U.S.C. § 1988); *Design and Production,*

*Inc. v. United States,* 21 Cl.Ct. 145, 150 (Cl.Ct. 1990) ("application of the relevant law and facts of the instant case dictate an award [of attorney's fees] different from the dollar amount negotiated by the parties and . . . therefore, the court had to reject the proposed stipulation as presented by the parties").

■ "In directing the courts to award 'reasonable' fees . . ., Congress undoubtedly wished to ensure that the lawyer representing a successful plaintiff would receive a reasonable fee for work reasonably found necessary—nothing less, and nothing more." *Lee v. Thomas & Thomas*, 109 F.3d 302, 306–7 (6th Cir.1997). "A reasonable fee . . . is one that is adequate to attract competent counsel, but does not produce windfalls to attorneys." *Id.* at 307.

■ "In order to determine the reasonableness of attorney's fees, courts typically take a two-step approach. First, courts apply the lodestar method. . . . The lodestar figure is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate for each attorney or paralegal involved." *Cole, supra,* *3. Plaintiff seeks reimbursement at an hourly rate of $215 for Mr. Hiller, $175 for his associate, Amanda Jordan, and $50 for their paralegal, Giselle Zabranskey. Plaintiff's Memorandum of Law (Dkt. # 31–2), p. 4. Midpoint's attorney agrees that these rates are "comparable to the rates charged by attorneys and paralegals in my firm, and . . . are reasonable". Declaration of Peter A. Muth (Dkt. # 32), ¶ 3. I agree. *See Cole, supra,* *3 ("$200 per hour has previously been found by this Court to be a reasonable rate for counsel's services").

■ While I do not dispute the accuracy of counsel's time records, I may only award fees for hours "*reasonably* expended on the litigation". *Cole, supra,* (emphasis added); *City of Riverside v. Rivera,* 477 U.S. 561, 580, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) ("attorneys are compensated only for time *reasonably expended* on a case") (emphasis in original). "Counsel should not expect to reap financial rewards for prolonging litigation unnecessarily." *Lee, supra,* 109 F.3d at 307. Thus, the second step in the court's analysis is to "assess the proportionality of the attorney's fees in relation to the damage awards. . . . [I]f the plaintiff has only partial or limited success, a reduction in the award of attorney's fees may be appropriate." *Cole, supra,* *3; *French, supra,* 489 F.3d at 404 ("limited success at trial is an accepted ground for limiting fees under the FDCPA").

■ "The statute . . . does not ordain any particular measure of 'success' to be used in calculating a fee. Rather, its terms are open-ended." *Carroll v. Wolpoff & Abramson,* 53 F.3d 626, 630 (4th Cir. 1995). One measure of plaintiff's success is to "consider [the] amount of damages awarded as compared to the amount sought". *Id.* In this case, plaintiff "sought statutory damages of $1,000.00 and actual damages of $10,000.00. Plaintiff's Memorandum of Law (Dkt. # 31–2), p. 3. Although I am awarding the statutory damages which she sought, the award of actual damages is far less than what she claimed. Given the facts of this case—including the lack of objective evidence to support a claim for significant emotional injury—Mr. Hiller (who is an experienced FDCPA practitioner) should have known that plaintiff's chances of obtaining a substantial award of actual damages were remote at best. *See, e.g., Milton, supra,* *5 ("in circumstances far more egregious than those present here, courts have awarded only several hundred dollars in [actual] damages" (citing authorities)).

Therefore, while plaintiff was free to pursue that claim, neither she nor her attorneys should expect to be fully compensated for their efforts in doing so, particularly in the face of an early settlement offer by defendants: [3]

**3.** Midpoint made a settlement offer on July 17, 2007, which was rejected by plaintiff on

"In light of the ... offer of judgment from the defendants, the likely reason for the Frenches to have gone to trial was because they hoped to obtain a significant award of actual damages. But it is clear from the trial testimony that the possibility of the Frenches obtaining such a recovery was minuscule. The most that David French could say was that he had trouble concentrating at work and had some sleepless nights; Tammy French's testimony of actual damages was even less compelling. There was no evidence that the Frenches incurred out-of-pocket expenses or suffered substantial emotional distress such that it was reasonable for them to expect that they would obtain a significant actual damages award.... In short, going to trial provided the Frenches with little benefit, and it had virtually no chance of doing so. It was a permissible exercise of discretion in these circumstances for the district court to conclude that fees incurred in this endeavor should not be recovered."

*French, supra,* 489 F.3d at 404.

Reduction of fees is particularly appropriate because, according to Midpoint, many of plaintiff's time entries "were a result of discovery requirements ... necessary to Midpoint's challenge to the Plaintiff's claim of actual damages" (Declaration of Peter A. Muth (Dkt. # 32), ¶ 2)—a claim as to which plaintiff and her attorneys were (and should have expected to be) largely unsuccessful.

Therefore, notwithstanding Midpoint's lack of opposition to the fee request, the public interest must also be considered in determining what fee is "reasonable". "Waste is not in the public interest. The

Congress that passed the Fair Debt Collection Practices Act in 1977 could hardly have wished to reward lawyers for doing nonproductive work and wasting their adversaries' time and the time of the courts as well." *Lee, supra,* 109 F.3d at 306; *French, supra,* 489 F.3d at 404; *Savino v. Computer Credit, Inc.,* 71 F.Supp.2d 173, 177 (E.D.N.Y.1999).

 Nevertheless, "success must be measured not only in the amount of the recovery but also in terms of the principle established and the harm checked.... Several courts have considered the deterrent effect of the litigation to be an important consideration when evaluating the 'degree of success' obtained by a particular plaintiff". *Zagorski v. Midwest Billing Services, Inc.,* 128 F.3d 1164, 1167, n. 6 (7th Cir.1997). Although mere technical violations of the FDCPA do not warrant a substantial award of attorneys' fees, "truly abusive or deceitful debt collection, credit reporting, and similar practices ... may establish a foundation for larger attorney's fee awards." *Carroll, supra,* 53 F.3d at 630.

 Here, Constantine engaged in repeated violations of the Act, including false representations and deceptive means in an attempt to collect the debt from plaintiff. While Midpoint claims that it "did not discover [that] its former collector, Benito Matthews [a/k/a David Constantine], was regularly violating the Fair Debt Collection Practices Act until he departed Midpoint's employ" (Midpoint's Statement of Facts (Dkt. # 18–2), ¶ 1), perhaps it should have been more vigilant. Therefore, a fee award in an amount sufficient to have some deterrent effect—and to encourage

July 24, 2007. Declaration of Kenneth R. Hiller (Dkt. # 31–3), ¶ 13. While the amount of the settlement offer is not stated in the record, I do not believe that the amount would materially affect my decision as to an

appropriate award of attorney's fees, in light of the other factors discussed herein. However, if plaintiff disagrees, she may disclose the amount of the settlement offer and seek reconsideration of this decision.

counsel to continue taking cases of this type—is appropriate.[4]

■ In determining the amount of the fee award, "the court should award only that amount of fees that is reasonable in relation to the results obtained. There is no precise formula for making this determination. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court has discretion in making this judgment." *Mann v. Acclaim Financial Services, Inc.,* 348 F.Supp.2d 923, 930–31 (S.D.Ohio 2004). Under the circumstances of this case, I conclude that an award of $7,000 is reasonable compensation for the time spent by Mr. Hiller, Ms. Jordan, and Ms. Zabranskey in prosecuting this action on behalf of plaintiff.

■ Finally, the $1,132.50 in costs sought by plaintiff for filing and service fees, deposition transcripts and videographer fees (Hiller Declaration (Dkt. # 31–3), ¶ 16) are "recoverable because they are incidental and necessary to the litigation". *Cole, supra,* *4.

## CONCLUSION

For the foregoing reasons, the Clerk of the court is hereby directed to enter final judgment in favor of plaintiff against defendant Midpoint in the amount of $9,632.50, consisting of $500 in actual damages, $1,000 in statutory damages, $7,000 in attorney's fees, and $1,132.50 in costs.

**SO ORDERED.**

4. "The proportionality of the fee award to the damages award cannot serve as the sole factor for determining allowable fees in civil rights cases.... Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation.... Since recovery under the FDCPA is generally small, the same rationale applied in civil rights cases applies to awards of attorney's fees under the fee-shifting provisions of the FDCPA." *Cole, supra,* *3.