**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 7, 2012

No. 11-20269

Lyle W. Cayce
Clerk

CANDY GUAJARDO

Plaintiff-Appellant

v.

GC SERVICES, LP

Defendant-Appellee

Appeal from the United States District Court for
the Southern District of Texas
4:08-CV-119

Before JONES, OWEN and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Candy Guajardo owed GC Services, LP's ("GC") $400.45 for an unpaid Sprint telephone bill. Guajardo alleged that when GC attempted to collect payment, GC mailed letters to her home address and made threatening and harassing telephone calls to her at work in an effort to collect the debt. *Id.* Guajardo filed suit against GC, alleging violations of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Texas Debt Collection Practices Act (the "TDCPA"), Tex. Fin. Code Ann. § 392.001 *et seq.*, and the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20269

Texas Deceptive Trade Practices Act (the "DTPA"), Tex. Fin. Code Ann. § 392.404(a).

At the close of the jury trial, on March 16, 2010, GC moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a). GC asserted that (1) Guajardo failed to prove consumer status under the DTPA as required to establish standing and (2) there was insufficient evidence of actual damages because Guajardo testified that she was not claiming compensation for time off of work, out-of-pocket expenses, or mental anguish. The district court denied GC's motion.

The jury answered four special interrogatories. In the first interrogatory, the jury found that GC violated the FDCPA in its dealings with Guajardo, awarded $1,000 for statutory damages, and "$120,000 (=$40,000 x 3)" for actual damages. The jury found in the second interrogatory that GC violated the TDCPA in dealing with Guajardo and for actual damages wrote "[i]ncluded in above." In the third interrogatory, the jury answered that GC had knowingly, but not intentionally, acted in violation of the DTPA. Finally, in the fourth interrogatory, the jury answered that Guajardo had given timely and reasonably detailed written notice to GC of her intent to pursue her claim under the DTPA. Neither party requested that the judge resubmit the charge to the jury to clarify the verdict.

The judgment entered on March 20, 2010 read in part, "[t]he jury awarded Plaintiff Candy Guajardo statutory damages of $1,000 and $40,000 in actual damages, which were trebled due to the jury's finding that the Defendant acted knowingly, for a total of $121,000."

On April 16, 2010, GC timely renewed its Rule 50(a) motion for judgment as a matter of law, again claiming that Guajardo introduced insufficient evidence of actual damages and failed to prove consumer status under the DTPA. On the same day, GC filed a Fed. R. Civ. P. 59(e) motion to alter or

amend the judgment to prevent a clear error of law or manifest injustice. GC also filed a motion requesting the court to suggest Guajardo accept a remittitur, and if she refused, to grant a new trial pursuant to Rule 59(a).

On March 15, 2011, the district court granted (1) GC's motion for judgment as a matter of law on all issues except for the statutory damages of $1,000 awarded for GC's FDCPA violation and (2) GC's motion to alter or amend and conditionally grant a new trial. The district court held that the motion for remittitur was moot.

Guajardo raises three issues on appeal: (1) whether the district court erred in granting GC's renewed motion for judgment as a matter of law; (2) whether the district court erred in granting GC's motion to alter or amend judgment; and (3) whether the district court erred in conditionally granting GC's motion for a new trial. We REVERSE the district court's grant of judgment as a matter of law as to Guajardo's FDCPA claims, VACATE the district court's grant of GC's motion to alter or amend the judgment, VACATE the district court's conditional grant of GC's motion for a new trial, and REMAND the case to the district court so that Guajardo may be offered a remittitur with the option of a new trial if she refuses the remittitur.

I. The Statutes at Issue

The Fair Debt Collection Practices Act (FDCPA), in part, prevents debt collectors from contacting a consumer "if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication" and forbids a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. §§ 1692c(a)(3); 1692d. A consumer is "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). Consumers may bring suit for "any actual damage sustained" and "in the case of any action by an individual, [for] such

additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. §§ 1692k(a)(1)–(2)(A). To determine the appropriate amount of damages, the factfinder considers, among other relevant factors, "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1).

Under the Texas Debt Collection Practices Act (TDCPA), "a debt collector may not oppress, harass, or abuse a person by . . . causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number." Tex. Fin. Code Ann. § 392.302(4). Consumers have standing to bring suit under the act and include any "individual who has a consumer debt." Tex. Fin. Code Ann. § 392.001(1). "'Consumer debt' means an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." Tex. Fin. Code Ann. § 392.001(2). "A person may sue for . . . actual damages sustained as a result of a violation of this chapter." Tex. Fin. Code Ann. § 392.403(a)(2). "A person who successfully maintains an action under this section . . . is entitled to not less than $100 for each violation of this chapter." Tex. Fin. Code. Ann. § 392.403(e).

The TDCPA is a "tie-in" statute to the Texas Deceptive Trade Practices Act (DTPA). Tex. Fin. Code Ann. § 392.404(a) ("A violation of this chapter is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code, and is actionable under that subchapter."). Under the DTPA:

> each consumer who prevails may obtain: [ ] the amount of economic damages found by the trier of fact. If the trier of fact finds that the conduct of the defendant was committed knowingly, the consumer may also recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of economic damages; or if the trier of fact finds the conduct was committed intentionally, the consumer may recover

4

damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of damages for mental anguish and economic damages.

Tex. Bus. & Com. Code Ann. § 17.50(b). Consumer is defined as,

an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more.

Tex. Bus. & Com. Code Ann. § 17.45(4).

## II. Judgment as a Matter of Law

We review a motion for judgment as a matter of law de novo. *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1322–23 (5th Cir. 1994). Under Federal Rule of Civil Procedure 50(a), a district court may grant judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find" for the nonmovant. Fed. R. Civ. P. 50(a)(1). "[I]n entertaining a motion . . . the court should review all of the evidence in the record[,] . . . draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

The district court's grant of judgment as a matter of law upheld the jury's award of statutory damages based on GC's FDCPA violation, while rejecting the jury's finding of actual damages. The district court held that in answering the FDCPA interrogatory regarding actual damages, "the jury not only misunderstood the Court's instructions as to awarding actual damages, but overlooked the absence of evidence of actual damages." The court stated that the only actual damages available, absent economic damages, were for mental anguish, and that Guajardo's evidence was insufficient to uphold the verdict.

The district court explained that Guajardo "admitted that she was not claiming mental anguish, and her testimony concerning her upset and unhappiness at receiving the calls does not meet any evidentiary standard of mental anguish."

Guajardo's complaint alleged actual damages under the FDCPA as well as the TDCPA,[1] and the jury was instructed on and answered interrogatories on actual damages for both her FDCPA and TDCPA claims.  We hold that the district court incorrectly held that a reasonable jury would not have a legally sufficient evidentiary basis to find proof of actual damages under the FDCPA.

Guajardo testified before the jury about the letters she received at home and the phone calls she received at work, claiming that GC made more than fifteen to twenty communication efforts and that she asked GC not to call her at work at least five times.  She described GC's employees' behavior as embarrassing, taunting, and degrading and claimed that the calls caused her to get "very upset, very emotional."  Guajardo alleged that at the beginning of every phone call a GC employee demanded "payment in full within 24 hours or else" and that in one call she was told "I can tell the kind of life you live by the fact that you don't pay your bills on time."  She testified that a GC employee called her a "liar" and told her that her claims  that she suffered from an anxiety disorder were just an excuse.  Guajardo told the jury that one of GC's calls caused her blood pressure to rise and made her physically shake while experiencing a temporary loss of hearing.  She explained that she would get stressed out and very embarrassed because she was not supposed to be taking calls at work and her boss could hear the calls.  Her boss was "tired" of the calls

---

[1] Guajardo specifically alleged that GC's FDCPA and TDCPA violations caused her to suffer actual damages in the form of personal humiliation, embarrassment, mental anguish, and emotional distress, and that GC's violations of the DTPA caused her actual and economic damages in relation to her mental anguish.

and came into her office on several occasions when she received the calls. She complained of panic attacks as well.

At the conclusion of her direct examination, however, Guajardo made narrowing concessions in response to questions about "what motivated you to file this lawsuit" and whether she "want[ed] to get rich off this lawsuit[.]" She first answered, "Oh, no. And I can't." When she claimed that she had missed work and incurred expenses in connection with her lawsuit, she was examined and answered as follows:

> Q. You're not here asking for money for time off work, are you[?]
> A. No, sir.
> Q. Okay. You're not asking to be compensated for those out-of-pocket expenses, are you?
> A. No, sir . . . I just want something to be done . . . . I want people to know that, you know, we've got rights out there and that I felt violated. I felt like, well, it needs to be compensated, whether it's, you know, GC Services needs to be looked at or what needs to happen.
> Q. So, you just want whatever it's going to take to make this right?
> A. Yes.
> [Attorney for Guajardo]: Okay. Your Honor, I don't have any further questions at this time.

On cross-examination, Guarjardo was asked to clarify her statement that "this lawsuit was not about money" as follows:

> Q. Okay. If it's not about money, then why are we here?
> A. Because my rights have been violated. I found out I had rights as a consumer and they were violated. That's why I'm here.
> Q. I understand that's the position you're taking. I guess I'm having a hard time as a civil litigator . . . are you telling this jury that you don't need any money or want any money in this case?
> A. I want what's right for me due [sic] to those–the ones that have–the rights have been violated. I'm not asking any more than that.
> Q. Okay. So, whatever the jury deems is fair, you're okay with that?
> A. Absolutely.

Q. Okay.  And you do agree with me that, basically, we're here because of these three phone calls that maybe–even to use your math, maybe lasted 15 minutes total?
A. The overall. . . . But, again, the three phone calls are the only ones documented that were the worst.  There were way more than those three.
Q. But those are the only ones you have really told us about today.  Correct?
A. The whole experience.  That's why I'm here.
Q. Those are the only that you've told us about today, correct, those three?
A. That I have documented.
Q. Right.  Now, are you claiming mental anguish in this case?
A. No.
Q. Okay.
[Attorney for GC Services]: I think I will pass the witness.

The following day, after a short re-direct examination, GC Services pursued re-cross examination of Guajardo, primarily establishing that "at least one of the phone calls that occurred occurred after you had already retained counsel," as well as questioning whether she might have experienced "panic attacks" for reasons other than GC's collection calls.  During this cross-examination, Guajardo did tell the jury that she had panic attacks both because of GC's collection calls and because of her boyfriend's abuse.

Finally, on re-direct examination, counsel for Guajardo first attempted to elicit that Guajardo's initial counsel had sought an amicable resolution of the matter, whereafter this exchange took place:

Q. You're not here asking for money because you had an anxiety attack, are you?
A. No.
Q. Thank you.

Having heard this evidence, the jury was told that actual damages under the FDCPA include "not only . . . out-of-pocket expenses but also damages for personal humiliation, embarrassment, mental anguish, and emotional distress."  GC did not object to these instructions given by the district court in spite of line-

by-line consideration and editing in the jury charge conference. In fact, GC's proposed instructions similarly defined damages for mental anguish as including "damages for personal humiliation, embarrassment, [and] emotional distress."[2]

In this trial-tested context, we hold that the jury had before it no evidence of out-of-pocket economic damages, but decidedly mixed testimony about non-economic damages. Conducting de novo review of the trial testimony and instructions given,[3] we find error in its alternative rulings that "the jury not only misunderstood the Court's instructions as to awarding actual damages, but [also] overlooked the absence of evidence of actual damages."

The jury charge assented to by GC, and given by the district court, unmistakably instructed that "[a]ctual damages not only include any out-of-pocket expenses but also damages for personal humiliation, embarrassment, mental anguish, and emotional distress." Correspondingly, when consulted, the trial record is not open to the conclusion that a reasonable jury could not have answered this special interrogatory affirmatively. The jury had a legally sufficient evidentiary basis to find for Guajardo. *See Reeves*, 530 U.S. at 150. To be sure, Guarjardo responded in a one word negative to a final cross-examination question asking her whether she was "*claiming* mental anguish" (emphasis

---

[2] In the jury charge conference, and focusing on the scope of actual damages permitted under the TDCPA, indeed, the exact phrase "mental anguish," GC alluded to intentions to offer a narrowing instruction but that he had decided to "keep from cluttering this up so much." GC added, "[w]ell, it's from a 1985 case. You know, and I guess I could go Shepardize it and see, but, you know, I — I guess we can handle this when we get down to the other issues. But I was willing to forego the instruction on mental anguish with *Parkway v. Woodruff* to try to keep from cluttering this up so much. But if he's going to insist on putting things like this in there, then I think I'm going to want an instruction on mental anguish and an instruction by the Texas Supreme Court in *Parkway v. Woodruff*." No such instruction was offered and, in the end, neither party objected to the definitions of mental anguish set forth in the jury instructions.

[3] The district court acknowledged that it had entered its judgment as a matter of law almost one year after the trial "based upon the Court's memory and notes," unfortunately without access or reference to the trial transcript itself.

No. 11-20269

added).  Yet her direct examination, her denials of her own—or any lawyer-sponsored—purpose to recoup economic loss, and her re-cross-examination all catalogue mental or physical sufferings, such as "panic attacks," that a jury reasonably could have determined proved "personal humiliation, embarrassment, mental anguish, and emotional distress."  The jury, therefore, heard contradictory proof: on the one hand, Guajardo's extensive description of non-economic harm, but on the other hand, her cross-examination acquiescence to a final question incorporating a legal term of art.  Even if the disclaimer were not focused on Guajardo's "claim," as distinct from her reaction to the calls, her re-cross examination then *did* describe, inter alia, "panic attacks."  In that larger testimonial context and fray,[4] we do not discern a complete absence of evidence supporting the jury's FDCPA verdict, above all in circumstances where all parties agreed that the jury should be instructed, and the district court did instruct the jury, that they could find damages for personal humiliation and embarrassment[5] and a *Parkway* narrowing instruction was considered, not requested and not given.[6]

III. Motion to Alter or Amend the Judgment

Guajardo also challenges the district court's grant of GC's motion to alter or amend the judgment.  As the district court explained in its order, a motion to alter or amend a judgment "must clearly establish either a manifest error of law or fact or must present newly discovered evidence."  GC does not argue that it

---

[4] Notably, in closing, Guajardo's counsel clearly rejected economic loss but did not disclaim personal humiliation and embarrassment damages.

[5] Recently, the Supreme Court observed in a separate statutory context that, "[e]ven as a legal term, however, the meaning of 'actual damages' is far from clear," and that, "the term 'actual damages' has [a] chameleon-like quality . . . ." *F.A.A. v. Cooper*, 132 S. Ct. 1441, 1449–50 (2012).

[6] Because Guajardo offered some evidence at trial of personal humiliation and embarrassment, albeit mixed, we need not decide whether the FDCPA includes actual damages for mental distress other and lesser than mental anguish.

presented new evidence or that an intervening change in the law occurred. The district court determined that there was a "manifest injustice" because the jury must have awarded actual damages by trebling damages improperly under the FDCPA, TDCPA, or DTPA.

However, "[w]here there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." *Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962); *see also Perricone v. Kan. City S. Ry. Co.*, 704 F.2d 1376, 1379 (5th Cir. 1983) ("The Seventh Amendment requires that if there is a view of the case which makes the jury's answers consistent, the court must adopt that view and enter judgment accordingly.") (quoting *Griffin v. Matherne*, 471 F.2d 911, 915 (5th Cir. 1973)). The DTPA only allows an award of not more than three times the amount of the amount of damages for mental anguish and economic damages if the jury determines that the defendant acted intentionally, which the jury did not in this case. Tex. Bus. & Com. Code Ann. § 17.50(b)(1). Although the FDCPA does not allow for trebled damages, 15 U.S.C. § 1692k, the jury may have been awarding $40,000 per documented harassing call rather than trebling damages. The $120,000 award is listed directly under actual damages for the FDCPA and then is later referenced in the jury's answer to the TDCPA's special interrogatory, although the TDCPA also does not allow for trebling. Tex. Fin. Code Ann. § 392.403. Thus, in contrast to the district court's order, we must view the verdict in its most consistent manner, an actual damages award of $40,000 for each call. With this interpretation, the jury's award is upheld as it does not involve a manifestly unjust interpretation of the law.

IV. Motion for a New Trial

Finally, GC challenges the district court's conditional grant of a motion for a new trial based on the excessiveness of the jury's damages award. Based on the evidence presented at trial, we agree with the district court that the actual

damage award was excessive.[7]    Guajardo offered some legally significant evidence of actual damages but not enough to warrant the jury's $120,000 award.  "In determining whether a new trial or remittitur is the appropriate remedy, this Circuit has held that when a jury verdict results from passion or prejudice, a new trial, not remittitur is the proper remedy.  Damage awards which are merely excessive or so large as to appear contrary to right reason, however, are subject to remittitur, not a new trial." *Brunnemann v. Terra Int'l., Inc.*, 975 F.2d 175, 178 (5th Cir.1992) (citations omitted).  Because the district court specifically rejected GC's argument that the jury verdict resulted from passion or prejudice,[8] remittitur is the proper remedy.

To guarantee parties their Seventh Amendment rights, remittitur may only be ordered if the party whose damages would be lowered has the option of rejecting the remitted award and opting for a new trial. *Hetzel v. Prince William Cnty.*, 523 U.S. 208, 211 (1998) (per curiam).  The new trial after the rejection of a remitted award need not address liability; a new trial should be set only to

---

[7] District courts have reduced jury awards of actual damages in light of some, but not extensive, evidence of emotional distress.  In *Ford v. Consigned Debts & Collections, Inc.*, No. 09-3102 (NLH)(AMD), 2010 WL 5392643 (D. N.J. 2010), the District of New Jersey surveyed FDCPA cases and found that:

> awards for actual damages are minimal for emotional distress absent any indication that mental health treatment has been obtained or that the emotional distress has concretely affected a plaintiff's personal or professional life.  Moreover, even in cases where a plaintiff has suffered permanent personal and professional damages, the damages awards are relatively small, particularly in comparison to plaintiff's $50,000 request.

*Id.* at *5.  Although the plaintiff had only alleged "a few weeks of emotional distress," the district court awarded $200 in actual damages. *Id.* at *7.  Likewise, presented with facts similar to this case, the Western District of New York ordered that the plaintiff be awarded $500 in actual damages under the FDCPA. *Miller v. Midpoint Resolution Grp., LLC*, 608 F. Supp. 2d 389, 393–94 (W.D.N.Y. 2009).

[8] The district court rejected GC's contentions that their motion for a new trial should be granted because (1) inadmissible evidence led to undue jury sympathy; (2) jury misconduct (trying to punish GC); or (3) that the verdict was against the great weight of the evidence.

determine damages. *See, e.g.*, *Goff v. City of Booneville*, No. 94-60748, 1996 WL 101396, at *4 (5th Cir. Feb. 26, 1996) (unpublished).

We, like the district court, have the authority to determine the value of a remittitur. *Brunnemann*, 975 F.2d at 178. We apply the "'maximum recovery rule, which prescribes that the verdict must be reduced to the maximum amount the jury could properly have awarded.'" *Id.* (quoting *Hansen v. Johns-Manville Prods. Corp.*, 734 F.2d 1036, 1046 (5th Cir. 1984)) (internal quotation marks omitted). Accordingly, we reduce the $120,000 judgment to $1,500 per call, for a total of $4,500. Guajardo, should she choose to reject that award, may instead elect a new trial on the issue of damages.[9]

V. Conclusion

We REVERSE and REMAND this case to the district court to enter judgment for Guajardo in the amount of $4,500, or, in the event Guajardo rejects that award, to order a new trial on damages.

---

[9] In light of our rulings, we decline to address Guajardo's additional procedural arguments alleging that: (1) the district court's order granting the post-judgment motions is facially flawed because the district court relied on its memory, rather than the trial transcript, to rule on the post-trial motions; (2) GC waived its right to review the manner in which the jury filled out the verdict form; and (3) the motion to alter or amend the judgment could not be granted a year later because the district court already denied, rather than reserving judgment on, GC's motion for judgment as a matter of law.