12-2636-cv
Cappiello v. ICD Publ'ns, Inc.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————————————

August Term, 2012

(Argued: April 25, 2013    Decided: June 18, 2013)

Docket No. 12-2636-cv

————————————

ROBERT N. CAPPIELLO,

*Plaintiff-Appellant*,

— v. —

ICD PUBLICATIONS, INC.,

*Defendant-Appellee*,

DAVID PALCEK,

*Defendant*.

————————————

B e f o r e:

WINTER, CALABRESI, and LYNCH, *Circuit Judges*.

————————————

Appellant secured a judgment in the United States District Court for the Eastern District of New York (Arthur D. Spatt, *J.*).  After the judgment was affirmed on appeal, the district court amended it to state that appellant was entitled to post-judgment interest at the rate set forth in 28 U.S.C. § 1961.  The district court rejected plaintiff's argument

that he was entitled to post-judgment interest at the rate provided for in New York C.P.L.R. § 5004. We hold that the district court correctly, and constitutionally, applied § 1961, notwithstanding that the judgment had been entered in a diversity action and had been docketed by appellant in a New York state court.

AFFIRMED.

—————————

DANIELÉ D. DE VOE, Weinstein, Kaplan & Cohen, P.C., Garden City, N.Y., *for Appellant*.

DON R. SAMPEN (Christopher T. Scanlon, Monet H. Duval, *on the brief*), Clausen Miller, P.C., Chicago, IL, *for Appellee*.

—————————

GERARD E. LYNCH, *Circuit Judge*:

On August 20, 2010, Robert N. Cappiello secured a judgment in the amount of $600,510.15 against ICD Publications, Inc. ("ICD") in the United States District Court for the Eastern District of New York (Arthur D. Spatt, *J.*). The judgment was affirmed by this Court on January 23, 2012. By order dated June 7, 2012, the district court amended the judgment to provide that Cappiello was entitled to post-judgment interest at the rate set forth in 28 U.S.C. § 1961. Cappiello appeals that June 7, 2012 order, contending that he is entitled to post-judgment interest at the rate set forth in § 5004 of the New York Civil Practice Law and Rules ("C.P.L.R."). We disagree and therefore affirm the district court's order.

2

# BACKGROUND

Cappiello was employed by ICD until he was fired on January 31, 2008. Cappiello then filed this lawsuit in the Supreme Court of the State of New York, asserting claims for breach of contract against ICD and for tortious interference with contract against ICD's president, David Palcek. The defendants removed the action to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §§ 1441 and 1332. Cappiello prevailed on his claim against ICD, and the district court entered judgment on August 20, 2010, awarding him $532,587.06 in damages plus $67,923.09 in pre-judgment interest for a total award of $600,510.15. ICD timely appealed that judgment

On November 1, 2010, while the appeal was pending, Cappiello filed a copy of the judgment with the Clerk of the Suffolk County Supreme Court in accordance with C.P.L.R. § 5018(b).[1] The following day, Cappiello delivered a property execution to the Suffolk County Sheriff's Office, directing it to levy against ICD's assets in that county. However, on December 2, 2010, upon ICD's posting of a supersedeas bond, the district court stayed execution of the judgment under Rule 62(d) pending appeal.

---

[1] Section 5018(b) of the C.P.L.R. reads: "A transcript of the judgment of a court of the United States rendered or filed within the state may be filed in the office of the clerk of any county and upon such filing the clerk shall docket the judgment in the same manner and with the same effect as a judgment entered in the supreme court within the county." Under 28 U.S.C. § 1962, upon being registered in the state court, the judgment became "a lien on the property located in [New York] in the same manner, to the same extent and under the same conditions as a judgment of a court of general jurisdiction in [New York]."

3

On January 23, 2012, this Court affirmed the district court's August 20, 2010 judgment. Accordingly, on February 28, 2012, ICD tendered payment of the judgment, including post-judgment interest at the rate of .25%, which was calculated in accordance with 28 U.S.C. § 1961.[2] Cappiello rejected the payment on the ground that ICD was required to pay the 9% New York post-judgment interest rate set out in C.P.L.R. §§ 5003 and 5004.[3] On March 7, 2012, ICD moved in the district court under Rule 60(b)(5) for a declaration that its February 28 tender fully satisfied the August 20, 2010 judgment.

While ICD's motion was pending, Cappiello renewed his efforts to collect on the judgment by means other than accepting ICD's offer of payment. On March 15, 2012, Cappiello informed ICD's bonding agency that he had registered the district court's August 20, 2010 judgment in the state supreme court, that the judgment would "not be satisfied unless and until both the New York State and the Eastern District of New York judgments have been satisfied," and that in order to satisfy what Cappiello thus identified as two separate judgments, the agency was required to pay the judgment amount plus

---

[2] That provision reads, in part: "Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." 28 U.S.C. § 1961(a).

[3] Section 5003 of the C.P.L.R. provides, in part: "Every order directing the payment of money which has been docketed as a judgment shall bear interest from the date of such docketing." Section 5004 provides: "Interest shall be at the rate of nine per centum per annum, except where otherwise provided by statute."

4

interest at the state rate of 9%. In light of Cappiello's letter, ICD moved on April 18, 2012 for a stay of execution pending resolution of ICD's Rule 60 motion. Cappiello opposed the motion and continued his collection efforts. In May and June, he contacted ICD's bank, first with a subpoena and a "restraining notice," and then with a letter demanding a response and threatening legal action. At no time, however, did Cappiello commence an enforcement action in state court asking for judicial relief of any kind.

The district court ruled on ICD's motions on June 7, 2012. It construed the Rule 60(b)(5) motion as a motion to clarify the judgment under Rule 60(a), which it granted, and it denied the motion for a stay as moot. Specifically, the court amended the August 20, 2010 judgment to specify that Cappiello was entitled to post-judgment interest calculated in accordance with 28 U.S.C. § 1961. The court rejected Cappiello's argument that he was entitled to New York's 9% interest rate. It observed that the judgment was a federal judgment notwithstanding its having been filed in state court, and held that the judgment was therefore governed by the "plain language" of § 1961, which "applies to '*any money judgment* in a civil case recovered in a district court.'" Cappiello v. ICD Publ'ns, 868 F. Supp. 2d 55, 60 (E.D.N.Y. 2012), quoting 28 U.S.C. § 1961 (emphasis added by district court). Cappiello filed a notice of appeal on July 2, 2012.

## DISCUSSION

We review a district court's award of post-judgment interest under 28 U.S.C. § 1961 de novo. Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 100 (2d Cir. 2004).

5

Cappiello contends that the district court's application of § 1961 to determine the post-judgment interest in this case was unconstitutional. To the extent he argues that the district court erred when it "purport[ed] to dictate the post-judgment interest rate to be applied *by New York* when enforcing a federal judgment that was properly docketed and sought to be enforced under New York law," Appellant's Br. 9 (emphasis added), his argument rests on a faulty premise. The district court did not issue a directive to a state court judge or other state court official, nor did it address the interest rate a state court judge would have been required to apply had Cappiello attempted to enforce the judgment in state court. Rather, the district court clarified the amount ICD was obligated to pay to satisfy the *federal* court that the *federal* judgment had been fully executed. Accordingly, because the district court did not "dictate the applicable post-judgment interest rate to be applied *by a state court* when enforcing a foreign judgment within its borders," Appellant's Reply Br. 3 (emphasis in original), Cappiello's contention is without merit.

Cappiello fares no better to the extent he argues that federal district courts cannot constitutionally apply 28 U.S.C. § 1961 to federal judgments rendered in diversity actions, or to federal judgments that have been docketed in state court. The district court here treated the question of § 1961's applicability in such cases as settled under the law of this Circuit. See Cappiello, 868 F. Supp. 2d at 59-60. Indeed, we have stated that "the federal post-judgment interest rate provided for in 28 U.S.C. § 1961 applies in diversity cases." FCS Advisors, Inc. v. Fair Fin. Co., 605 F.3d 144, 147 (2d Cir. 2010). However,

6

we have not previously addressed a frontal challenge to the statutory or constitutional application of § 1961 in such cases.  See, e.g., id. (stating without discussion that § 1961 typically applies in diversity actions, while deciding whether parties had successfully contracted to apply New York post-judgment interest rates); Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008) (same, while deciding whether the district court erred when it failed to award any post-judgment interest); D'Urso, 371 F.3d at 101-02 (same, while deciding whether parties had successfully contracted to apply a 15.5% post-judgment interest rate).  Faced with such a challenge by Cappiello, we now hold that, under § 1961, federal district courts must apply the federal rate of post-judgment interest to judgments rendered in diversity actions, even when those judgments have been docketed in state court, and that such application does not violate the Constitution.[4]

By its plain terms, § 1961 applies to this case.  As the district court noted, the statute's language applies to "*any* money judgment in a civil case recovered in a district court," 28 U.S.C. § 1961 (emphasis added), and it makes no exception for judgments

---

[4] We do not hold, as ICD has urged us to, that § 1961 preempts state law such that a state court asked to enforce a federal judgment would be required to apply the federal rate of post-judgment interest rather than the rate prescribed by state law.  Because, as discussed below, § 1961 represents an exercise of Congress's authority to regulate the federal courts, it is not obvious that it purports to govern state court proceedings.  At least one New York appellate court has held that it does not.  See Hartman v. Morganstern, 814 N.Y.S.2d 169, 171 (2d Dep't 2006) ("[T]here is no case law or statute requiring a New York State court to apply the Federal interest rate as opposed to the higher New York State interest rate . . . .").  However, we have no occasion to address whether § 1961 preempts the application of state-law post-judgment interest rates in state court proceedings because that question is not before us.

rendered in diversity actions or judgments subsequently registered in state court.  See

Forest Sales Corp. v. Bedingfield, 881 F.2d 111, 113 (4th Cir. 1989) ("[O]nly if diversity

actions were explicitly *excluded* should they be read out of the statute.") (emphasis in

original); Nissho-Iwai Co. v. Occidental Crude Sales, Inc., 848 F.2d 613, 623 (5th Cir.

1988) ("The statute specifies no different treatment for diversity cases."); cf. Lewis v.

Whelan, 99 F.3d 542, 545 (2d Cir. 1996) ("The award of post-judgment interest is

mandatory on awards in civil cases as of the date judgment is entered."); Carte Blanche

(Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd., 888 F.2d 260, 269 (2d Cir. 1989)

("[Section 1961's] terms do not permit of the exercise of judicial discretion in its

application.") (internal quotation marks omitted).

Cappiello argues that, despite its plain terms, applying § 1961 in diversity cases is

unconstitutional in light of the principle established in Erie R.R. Co. v. Tompkins, 304

U.S. 64 (1938) – that, as Cappiello puts it, "nothing in the Constitution afforded Congress

with a general law making authority over the states," Appellant's Br. 12 (emphasis

omitted).  Erie, however, does not govern this case.  The Supreme Court in Erie construed

the Rules of Decision Act, § 34 of the Judiciary Act of 1789, which provides: "The laws

of the several states, *except where the Constitution or treaties of the United States or Acts*

*of Congress otherwise require or provide*, shall be regarded as rules of decision in civil

actions in the courts of the United States, in cases where they apply," 28 U.S.C. § 1652

(emphasis added).  See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996)

(noting that "Erie read the Rules of Decision Act"); Erie, 304 U.S. at 72-73 ("[T]he

8

purpose of [section 34] was merely to make certain that, in all matters *except those in which some federal law is controlling*, the federal courts exercising jurisdiction in diversity of citizenship cases would apply as their rules of decision the law of the state . . . .") (emphasis added).

Where a valid federal statute applies, "[w]e do not wade into Erie's murky waters." Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 130 S. Ct. 1431, 1437 (2010); cf. Hanna v. Plumer, 380 U.S. 460, 469-70 (1965) (noting respondent's "incorrect assumption that the rule of [Erie] constitutes the appropriate test of the validity and therefore the applicability of a Federal Rule of Civil Procedure"). Rather, because § 1961 purports to govern, it applies if it is valid, even if, absent an applicable federal statute, post-judgment interest would be calculated by the federal courts in accordance with state law under Erie. See Burlington N. R.R. Co. v. Woods, 480 U.S. 1, 4-5 (1987) (holding that a federal rule must be applied to matters within its scope if "it represents a valid exercise of Congress' rulemaking authority"). Therefore, unless Congress exceeded its authority in adopting § 1961, the district court properly applied it here. See Hanna, 380 U.S. at 471 ("When a situation is covered by one of the Federal Rules . . . the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, [the Supreme] Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions.").

The Constitution vests Congress with the power "[t]o constitute Tribunals inferior to the supreme Court" and "[t]o make all Laws which shall be necessary and proper for carrying into Execution" that power. U.S. Const. art. I., § 8, cls. 9, 18. Thus, while "Congress has no power to declare substantive rules of common law applicable in a state," Erie, 304 U.S. at 78, "Erie and its offspring cast no doubt on the long-recognized power of Congress to prescribe housekeeping rules for federal courts even though some of those rules will inevitably differ from comparable state rules," Hanna, 380 U.S. at 473. A statute such as § 1961 that purports to "prescribe rules for the courts [Congress] has created" falls within Congress's Article I power so long as it "regulate[s] matters rationally capable of classification as procedure," Shady Grove, 130 S. Ct. at 1442 (internal quotation marks omitted); accord Hanna, 380 U.S. at 472 ("[T]he constitutional provision for a federal court system (augmented by the Necessary and Proper Clause) . . . includes a power to regulate matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either.").

Section 1961 satisfies that standard, as its primary objective and effect is to maintain the federal court system without altering the substantive rights and interests the system adjudicates. Section 1961 was designed to make frivolous appeals less financially advantageous to judgment debtors and thereby to eliminate such appeals from the federal appellate courts' dockets. See D'Urso, 371 F.3d at 102, citing S. Rep. No. 97-275, at 11,

10

30 (1981).[5]  In addition, "the universal application of Section 1961 to all types of claims makes for logical uniformity," <u>Kotsopoulos v. Asturia Shipping Co.</u>, 467 F.2d 91, 95 (2d Cir. 1972), and therefore easy administration of all federal judgments no matter the nature of the underlying claims.  Congress has a legitimate interest in seeing that federal judgments are enforced without intervening baseless appeals, and in doing so by means of an easily administered, uniform rule.[6]

---

[5] It might seem at first glance that the New York rate would do even more to deter frivolous appeals.  But on deeper examination, the federal rule is well calibrated to Congress's purpose.  Before § 1961 was amended to create a uniform federal interest rate, "the interest rate on judgments in the federal courts [was] based on varying state laws and frequently [fell] below the contemporary cost of money."  S. Rep. No. 97-275, at 11.  Congress therefore amended § 1961 so that "a realistic and nationally uniform rate of interest on judgments in the federal courts . . . would be keyed to the prime interest rate as determined by the Internal Revenue Service" in order to "eliminate[] an economic incentive . . . for a losing defendant to appeal a judgment and accumulate interest on the judgment award at the commercial rate during the pendency of the appeal."  <u>Id</u>.  Because the prime interest rate rises and falls, rates calculated under § 1961 may be sometimes higher and sometimes lower than fixed interest rates established under state law.  Thus, for example, New York's 9% rate is substantially higher than the .25% rate calculated here under § 1961, and it therefore creates an even greater disincentive for frivolous appeals than does § 1961.  It is up to Congress, however, to determine the rate that in its judgment will best eliminate any influence that post-judgment interest rates might have on a judgment debtor's decision to appeal a federal judgment to a federal court of appeals.  And indeed, Congress's choice was entirely rational: pegging the post-judgment interest rate to the commercial interest rate eliminated both economic incentives and disincentives to appeal based on any differential between the value of judgment debts and the value of commercial investments.

[6] Moreover, § 1961 achieves such uniformity without altering the substance of the underlying claims.  Unlike pre-judgment interest, post-judgment interest is not awarded to make a plaintiff whole for his injury.  Rather, "[o]nce a claim is reduced to judgment, the original claim is extinguished and merged into the judgment; and a new claim, called a judgment debt, arises."  <u>Kotsopoulos</u>, 467 F.2d at 95; <u>accord</u> <u>FCS Advisors</u>, 605 F.3d at 148; <u>D'Urso</u>, 371 F.3d at 102.  Section 1961 acts only upon final federal judgments, not upon the claims – whether state or federal – that give rise to, and are extinguished by, them.

Accordingly, § 1961 is at least arguably procedural and therefore represents a constitutional exercise of Congress's Article I powers.  See Burlington, 480 U.S. at 5 (observing that "[t]he constitutional constraints on the exercise of [Congress's] rulemaking authority define a test of reasonableness").  As that statute's plain terms govern the rate of post-judgment interest applicable in this case, the district court correctly held that Cappiello is entitled to .25% post-judgment interest, and not the 9% allowed under New York law, and that the federal judgment will be satisfied upon the payment by ICD of the judgment amount plus the interest required by § 1961.

## CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.