RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0255p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

VICKI A. LINNEMAN and OBADIAH N. RITCHEY, on behalf of themselves and those similarly situated,

*Plaintiffs-Appellees*,

*v.*

VITA-MIX CORPORATION, VITA-MIX MANAGEMENT CORPORATION, and VITA-MIX MANUFACTURING CORPORATION,

*Defendants-Appellants*.

Nos. 19-3993/4249

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:15-cv-00748—Susan J. Dlott, District Judge.

Argued: August 3, 2020

Decided and Filed: August 12, 2020

Before: GRIFFIN, KETHLEDGE, and THAPAR, Circuit Judges.

_____

## COUNSEL

**ARGUED:** John M. Fitzgerald, TABET DIVITO & ROTHSTEIN, LLC, Chicago, Illinois, for Appellants. W. B. Markovits, MARKOVITS, STOCK & DEMARCO, LLC, Cincinnati, Ohio, for Appellees. **ON BRIEF:** John M. Fitzgerald, TABET DIVITO & ROTHSTEIN, LLC, Chicago, Illinois, Tracey L. Turnbull, PORTER WRIGHT MORRIS & ARTHUR, LLP, Cleveland, Ohio, Caroline H. Gentry, PORTER WRIGHT MORRIS & ARTHUR, LLP, Dayton, Ohio, for Appellants. W. B. Markovits, Paul M. DeMarco, Justin C. Walker, Terence R. Coates, MARKOVITS, STOCK & DEMARCO, LLC, Cincinnati, Ohio, Jeffrey S. Goldenberg, GOLDENBERG SCHNEIDER, L.P.A., Cincinnati, Ohio, for Appellees.

———————————

**OPINION**

———————————

THAPAR, Circuit Judge.  What began as a case about defective blenders has devolved into a quarrel about attorney's fees.  In this appeal, we consider several questions of first impression about attorney's fees in class-action settlements.  We agree with the district court on many issues but find that it abused its discretion as to the final award of fees.  We therefore vacate the award and remand for further proceedings.

I.

Vita-Mix is a family-owned company that manufactures and sells high-performance blenders.  Several years ago, the company learned that some of its blenders contained tiny black flecks after use.  Vita-Mix determined that these flecks were polytetrafluoroethylene—a substance commonly used in kitchen appliances and used in the seals of its blenders.  Normal wear-and-tear would cause tiny pieces—so tiny they were almost invisible to the naked eye—to rub off from the seal and end up in the blender container.

Because of this defect, the named plaintiffs (owners of Vita-Mix blenders) filed this class action, alleging various claims against the company under state law.  The parties soon entered into settlement negotiations and eventually agreed to a proposed settlement.  The settlement provided for two classes of plaintiffs:  a household class and a commercial class.  Class members who owned a household blender could request either a $70 gift card or a replacement blade assembly, which included a non-flecking blender seal.  (Those with multiple household blenders were eligible for a $140 gift card.)  In contrast, class members who owned a commercial blender could request only a replacement blade assembly.  The settlement also specified that class counsel were entitled to attorney's fees but that the parties had not agreed on the amount.  The district court preliminarily approved this settlement in late 2017.

The parties then spent most of the next two years arguing about attorney's fees.  The district court ultimately decided to calculate the fees by multiplying the hours class counsel reasonably worked on the case by a reasonable hourly rate.  That calculation resulted in a fees

award of a little over $2.2 million. But based on the purportedly exceptional nature of the litigation, the court enhanced this figure by 75% for a final award of just under $4 million. Vita-Mix appealed that decision. The district court later awarded post-judgment interest on the fees award. Vita-Mix appealed that order too.

## II.

Vita-Mix raises a host of challenges to the district court's award of attorney's fees. Some have merit; others do not. We review legal questions involving the interpretation of statutes or the settlement agreement de novo but review the district court's final award for an abuse of discretion. *See Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 848 (6th Cir. 2013); *Riley v. Kurtz*, 361 F.3d 906, 910–11 (6th Cir. 2004).

## A.

Vita-Mix first argues that the district court used the wrong method to calculate the award of attorney's fees.

We begin with a little background about how district courts typically calculate attorney's fees in class-action settlements. There are two leading approaches known as the lodestar method and the percentage method. *See Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 279–80 (6th Cir. 2016); 5 William B. Rubenstein et al., *Newberg on Class Actions* §§ 15:63–64 (5th ed. June 2020 update). The lodestar method attempts to approximate the work done: the court multiplies the number of hours reasonably worked on the case by a reasonable hourly fee—with the possibility of an enhancement in certain cases. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551–52 (2010); *Gascho*, 822 F.3d at 279. In contrast, the percentage method attempts to approximate the result achieved: the court calculates the fees as a percentage of the class members' recovery in the case. *See Gascho*, 822 F.3d at 279. Because "each method has its respective advantages and drawbacks," district courts have discretion in some contexts to choose the more appropriate method for a particular case. *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). But still, the court must ensure—whichever method it chooses—that the final award is "reasonable" under the circumstances. Fed. R. Civ. P. 23(h); *Jordan v. Mark IV Hair Styles, Inc.*, 806 F.2d 695, 697 (6th Cir. 1986).

Enter the Class Action Fairness Act (CAFA).  Congress enacted CAFA to curb various "abuses of the class action device."  Pub. L. No. 109-2, § 2(a)(2), 119 Stat. 4, 4 (2005); *Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 407–08 (6th Cir. 2008).  Among other things, the Act targets "coupon" settlements—cases in which class counsel would receive large fees awards while class members would often receive coupons of little or no value.  *See* CAFA § 2(a)(3)(A), 119 Stat. at 4; *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1177–80 (9th Cir. 2013).  The relevant provision on this issue, 28 U.S.C. § 1712, regulates attorney's fees in coupon settlements.

The district court held—and neither party meaningfully disputes—that the gift cards in this case qualify as "coupons" under CAFA and thus that § 1712 applies.  The question for us is whether § 1712 permitted the district court to use the lodestar method (rather than the percentage method) when it calculated the attorney's fees in this case.[1]

Section 1712 provides the following instructions on how to calculate attorney's fees:

> (a) CONTINGENT FEES IN COUPON SETTLEMENTS.—If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed.
>
> (b) OTHER ATTORNEY'S FEE AWARDS IN COUPON SETTLEMENTS.—
>
> > (1) IN GENERAL.—If a proposed settlement in a class action provides for a recovery of coupons to class members, and a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action.
> >
> > (2) COURT APPROVAL.—Any attorney's fee under this subsection shall be subject to approval by the court and shall include an appropriate attorney's fee, if any, for obtaining equitable relief,

---

[1]The parties have litigated this case on the view that either (1) the district court had a choice between the lodestar method and the percentage method (class counsel's position) or (2) the district court had to use the percentage method (Vita-Mix's position).  We therefore need not consider a third possibility:  namely, that the district court had to use the lodestar method because it awarded fees based on a contractual fee-shifting provision. *Cf. In re Home Depot Inc.*, 931 F.3d 1065, 1081–82 (11th Cir. 2019) (declining to resolve whether district courts must use the lodestar method in contractual fee-shifting cases).

including an injunction, if applicable. Nothing in this subsection shall be construed to prohibit application of a lodestar with a multiplier method of determining attorney's fees.

(c) ATTORNEY'S FEE AWARDS CALCULATED ON A MIXED BASIS IN COUPON SETTLEMENTS.—If a proposed settlement in a class action provides for an award of coupons to class members and also provides for equitable relief, including injunctive relief—

(1) that portion of the attorney's fee to be paid to class counsel that is based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (a); and

(2) that portion of the attorney's fee to be paid to class counsel that is not based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (b).

As several of our sister circuits have noted, this statute is not a model of draftsmanship. *See In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 488 (4th Cir. 2020); *Galloway v. Kan. City Landsmen, LLC*, 833 F.3d 969, 973 (8th Cir. 2016); *Redman v. RadioShack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014); *In re HP Inkjet*, 716 F.3d at 1181. Still, we must do the best we can to make sense of Congress's handiwork.

Begin at the beginning: with subsection (a). That subsection states that "[i]f a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed." 28 U.S.C. § 1712(a). All agree about one thing this provision does: it prohibits the use of the face value of coupons rather than their redemption rate when calculating attorney's fees based on the percentage method. In other words, the provision requires district courts to determine how many class members *use* a coupon rather than how many class members are *entitled* to one.

The dispute here turns on when a district court must calculate attorney's fees in this way—that is, using the percentage method based on the redemption rate. And that question centers on the meaning of the phrase "attributable to the award of the coupons" because only *that* "portion" of the fees award must be "based on the value to class members of the coupons that are redeemed."

Congress did not define the phrase "attributable to" in CAFA, so we give that phrase its ordinary meaning. *See Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1759 (2018). As relevant here, dictionaries tend to define "attribute" in terms of causation. *See, e.g., The American Heritage Dictionary of the English Language* 117 (4th ed. 2000) (defining "attribute" as "[t]o relate to a particular cause or source; ascribe"); *Webster's Third New International Dictionary* 142 (2002) (defining "attribute" as "to explain as caused or brought about by" and "regard as occurring in consequence of or on account of"); *cf. AES-Apex Emp'r Servs., Inc. v. Rotondo*, 924 F.3d 857, 862 (6th Cir. 2019). That also tracks how courts have understood the term in other statutory contexts. *See, e.g., Nat'l Ass'n of Greeting Card Publishers v. U.S. Postal Serv.*, 462 U.S. 810, 823, 826–27 (1983); *Schaeffler v. United States*, 889 F.3d 238, 243 (5th Cir. 2018).

But this definition doesn't tell us very much because the concept of causation itself "has many meanings and shades of meanings." *State Mut. Life Assur. Co. of Worcester v. Heine*, 141 F.2d 741, 746 (6th Cir. 1944). Consider three different ways in which a coupon award could be the "cause" of attorney's fees. On the broadest view, the coupons would be the cause of attorney's fees where, but for the coupons, there wouldn't have been any fees. Imagine that the plaintiffs wouldn't have settled their case without the award of coupons. In that scenario, you could say that *all* the attorney's fees were "attributable to" the coupons because there wouldn't have been any settlement (and thus any fees) without the coupons. Contrast this with a somewhat narrower view of causation. On this view, the coupons would be the cause of attorney's fees only to the extent that they're a percentage of the overall award. For instance, if the settlement consisted of half coupons and half cash payments, then only half of the attorney's fees would be "attributable to" the coupons. Finally, consider a third, still narrower view of causation. On this view, the coupons would be the cause of attorney's fees only where the district court uses the value of the coupons to calculate the fees. Only then—on this view—have the coupons "produced" or "generated" fees. *See AES-Apex*, 924 F.3d at 862 (cleaned up); *Schaeffler*, 889 F.3d at 243 (cleaned up). In the abstract, the phrase "attributable to" could support any of these theories of causation (and perhaps others).

Fortunately, we need not pick a theory out of a hat because Congress has already picked one for us—as shown by subsection (b). That subsection provides that, "[i]f a proposed settlement in a class action provides for a recovery of coupons to class members, *and a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel*, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action." 28 U.S.C. § 1712(b)(1) (emphasis added). This provision makes two things clear: (1) that a district court might not "use[]" a portion of a coupon award "to determine the attorney's fee," and (2) that in such cases the court should determine the fee "based upon the amount of time class counsel reasonably expended working on the action" (*i.e.*, the lodestar method). *See In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 709 (7th Cir. 2015). And that tells us that the phrase "attributable to" must carry the third and narrowest understanding of causation. Otherwise, the provisions of § 1712 would conflict: subsection (a) would require district courts to calculate fees based on the percentage method, while subsection (b) would permit courts not to do so.

Subsection (c) reinforces this reading. That subsection explains that courts may sometimes calculate an attorney's fees award on a "mixed basis"—using both approaches laid out in the prior subsections. Specifically, subsection (c) provides that the "portion of the attorney's fee . . . that is based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (a)," while the "portion of the attorney's fee . . . that is not based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (b)." 28 U.S.C. § 1712(c)(1)–(2). Again, this provision contemplates discretion in how district courts calculate fees. The statute does not mandate that courts calculate fees based on the value of the coupons redeemed in every coupon settlement. Rather, it requires courts to do so only when the attorney's fees are "based upon" the coupons—that is, when a district court "grounds" its fees decisions in the coupons. *See* Richard A. Spears, *McGraw-Hill's Dictionary of American Idioms and Phrasal Verbs* 34 (2005) (defining "base upon" as "to ground something, such as one's opinion, decision, or thinking, on someone or something"). So again, § 1712 requires a district court to use the redemption rate only when the court calculates fees based on the percentage method; it doesn't prohibit the court from using the lodestar method instead.

For what it's worth, it also makes sense that Congress would have written § 1712 this way. Recall that both the lodestar method and the percentage method have their "respective advantages and drawbacks." *Rawlings*, 9 F.3d at 516. And if Congress had required district courts to use the percentage method in every coupon settlement, then it would have created a perverse incentive for attorneys: namely, to settle too early and for too little in order to maximize the fees award on a per-hour basis. *See id*. at 516; *cf. Galloway*, 833 F.3d at 975. In a sense, CAFA works more effectively because there's some ex ante uncertainty about which method a district court will use. Lawyers can't game the system if they don't know what system will be used.

For good reasons, then, the majority of our sister circuits have read § 1712 as generally allowing district courts to use the lodestar method in coupon settlements. *See Galloway*, 833 F.3d at 974–75; *In re Sw. Airlines*, 799 F.3d at 706–10; *Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1, 4–5 (2d Cir. 2012); *see also* 5 Rubenstein et al., *supra*, § 15:71 (noting this to be the prevailing interpretation among federal courts).

It's true that one circuit has taken a different view. *See In re HP Inkjet*, 716 F.3d 1173. The Ninth Circuit seems to have reasoned that, whenever a settlement includes coupons, some portion of the attorney's fees award is "attributable to" the coupons and thus this portion must be calculated based on the percentage method. *Id*. at 1181–83. The exact scope of this decision remains somewhat unclear. *Compare In re Easysaver Rewards Litig.*, 906 F.3d 747, 759 (9th Cir. 2018) (reading *In re HP Inkjet* as allowing a district court to use the lodestar method in a mixed settlement "provided that it does so without reference to the dollar value of the settlement fund"), *with In re Easysaver Rewards Litig.*, No. 09-cv-02094-BAS-WVG, 2019 WL 4736210, at *6 n.2 (S.D. Cal. Sept. 27, 2019) (noting "some tension" between *In re HP Inkjet* and *In re Easysaver*). But in any event, we don't find its analysis persuasive.

The Ninth Circuit began by explaining that "an attorneys' fees award is 'attributable to' an award of coupons where the attorneys' fees award is a 'consequence' of the award of coupons." *In re HP Inkjet*, 716 F.3d at 1181. So far, so good. That definition sounds much like causation. The Ninth Circuit's mistake was to elaborate on this definition without careful attention to the rest of the statute. Specifically, the court reasoned that an award of attorney's

fees was "attributable to" an award of coupons to the extent that the coupons made up a percentage of the overall recovery (the second view of causation discussed above). *See id.* at 1184–85. The court offered this "simple hypothetical" to support its conclusion: if a settlement provided only coupon relief, then (the court thought) *all* of the attorney's fees must be "attributable to" coupons because there was nothing else in the settlement. *Id.* at 1182.

The problem, again, is that this reasoning runs headfirst into § 1712(b)(1), which provides for use of the lodestar method if "a portion of the recovery of the coupons is not used to determine the attorney's fee." The Ninth Circuit never explained how "a portion of the recovery of the coupons" could ever *not* be "used to determine the attorney's fee" under its reading of the statute. *See In re HP Inkjet*, 716 F.3d at 1183–84. And in failing to do so, the court disregarded its own admonition that "intelligent drafters do not contradict themselves." *Id.* at 1184 (cleaned up).

The Ninth Circuit also expressed concern that any other reading would "nullify the command" of subsection (a). *Id.* But that's not true. Subsection (a) plays an essential role whatever its relationship to subsection (b): it prevents district courts from using the face value of coupons in determining the value of a settlement. *See In re Sw. Airlines*, 799 F.3d at 708, 710 n.2. The real problem is with the Ninth Circuit's reading of the statute: its interpretation of subsection (a) erases the language in subsection (b) that allows district courts *not* to use a portion of the coupon award to determine attorney's fees.

Nor do we find the Ninth Circuit's reliance on CAFA's purpose or legislative history any more persuasive. *See In re HP Inkjet*, 716 F.3d at 1184–86. It would be enough to say that courts shouldn't consider such "extra-textual evidence" when the statutory text (read as a whole) is clear—as it is here. *Nat'l Wildlife Fed'n v. Sec'y of the U.S. Dep't of Transp.*, 960 F.3d 872, 879 (6th Cir. 2020) (cleaned up). But even on its own terms, the evidence points in conflicting directions. *See Galloway*, 833 F.3d at 975; *In re Sw. Airlines*, 799 F.3d at 709–10. All in all, the Ninth Circuit's reading of § 1712 fails to persuade.

In the alternative, Vita-Mix suggests that, even if CAFA allows district courts to use the lodestar method in coupon settlements, the statute requires courts to use the percentage method as a "crosscheck" on the lodestar calculation. But nothing in § 1712 instructs district courts to conduct a crosscheck. And our court has repeatedly said that district courts are not required to conduct a crosscheck in every case. *See, e.g.*, *Gascho*, 822 F.3d at 281–82.

That is not to say that district courts may entirely ignore the coupon redemption rate when they use the lodestar method. As discussed above, a district court must ensure that a fees award is "reasonable," which includes as "the most critical factor . . . the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). And as discussed below, a district court will often abuse its discretion if it fails to consider the redemption rate as part of that analysis. The point is simply that § 1712 does not require district courts to calculate attorney's fees based on the percentage method in every coupon settlement.

In sum, the district court correctly held that § 1712 permitted it to use the lodestar method in this case.

B.

Vita-Mix next argues that the settlement agreement places certain limits on any award of attorney's fees. The parties agree that Ohio law governs the interpretation of their agreement. And under Ohio law, courts enforce contracts, including provisions regarding attorney's fees, according to their terms. *See Worth v. Aetna Cas. & Sur. Co.*, 513 N.E.2d 253, 256 (Ohio 1987); *U.S. Fire Ins. v. Am. Bonding Co.*, 2016-Ohio-7968, ¶ 48.

*Multiplier.* Vita-Mix first contends that the settlement agreement prohibits the use of a multiplier—that is, an enhancement on top of the original lodestar calculation. To be sure, the agreement doesn't mention the term "multiplier." But the agreement does say that class counsel can seek attorney's fees under Civil Rules 23(h) and 54(d)(2), which provide for "reasonable" fees. And courts have long recognized that "reasonable" attorney's fees can include a multiplier in limited circumstances. *See, e.g.*, *Perdue*, 559 U.S. at 552–55; *Rawlings*, 9 F.3d at 516–17; *Phoenix Lighting Grp., L.L.C. v. Genlyte Thomas Grp., L.L.C.*, --- N.E.3d ---, 2020-Ohio-1056,

¶¶ 10–19. That doesn't mean that the district court should have used a multiplier here (an issue discussed more below). It just means the settlement allowed the court to use one.

*Fees-on-Fees.* Vita-Mix also contends that the settlement agreement prohibits an award of fees-on-fees—that is, attorney's fees for seeking attorney's fees. The company points out that the agreement limits attorney's fees to those "incurred by [class counsel] in prosecuting the Lawsuit." R. 35-2, Pg. ID 478. But class counsel did not stop "prosecuting" the lawsuit with the entry of the settlement order. *See Black's Law Dictionary* 1416 (10th ed. 2004) (defining "prosecute" as "[t]o commence and carry out (a legal action)" or "[t]o engage in; carry on"). After all, the plaintiffs' complaint included a request for attorney's fees as part of the prayer for relief. And the district court didn't terminate the case from its docket until after it decided the fees dispute. If Vita-Mix had wanted to limit the fees to those "incurred by class counsel in *obtaining the settlement*," the settlement agreement could have said as much. But it didn't. Thus, the settlement allowed the district court to award fees-on-fees. *Cf. Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 721–25 (6th Cir. 2016) (discussing other situations where attorneys may seek fees-on-fees); Rubenstein et al., *supra*, § 15:93 (noting that courts often allow fees-on-fees in fee-shifting cases but not in common-fund cases).

In short, the district court correctly interpreted the settlement agreement.

## C.

Vita-Mix also argues that the district court abused its discretion when it calculated the award of attorney's fees. The company challenges various aspects of the award, but its arguments can be grouped into three general issues: (1) the determination of the billing rates, (2) the use of an upward multiplier, and (3) the reasonableness of the final award. We address all three issues to guide the proceedings on remand.[2]

---

[2]Some courts have looked to state law to calculate attorney's fees in class actions (like this one) based on state-law claims or where the fees are authorized by a settlement agreement. *See, e.g.*, *In re Volkswagen & Audi Warranty Extension Litig.*, 692 F.3d 4, 15–17 (1st Cir. 2012). But here both parties have treated this issue as governed by federal law, so we will do the same. *Cf. Pivnick v. White, Getgey & Meyer Co.*, 552 F.3d 479, 484 (6th Cir. 2009).

1.

The district court first abused its discretion when it determined the billing rates. This circuit uses the "community market rule" to calculate a reasonable billing rate. *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995). Under that rule, the billing rate "should not exceed what is necessary to encourage competent lawyers within the relevant community to undertake legal representation." *Id.* at 535–36; *see also, e.g.*, *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007). In a similar vein, our court has made clear that lawyers are entitled only to "reasonable" fees and that "such fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region." *Ne. Ohio Coal.*, 831 F.3d at 716 (cleaned up). The burden is on the lawyer seeking fees to submit evidence—"in addition to the attorney's own affidavits"—showing that the requested rate is reasonable. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

Here, the district court observed that courts in the Southern District of Ohio often look to a list of pre-calculated billing rates tiered by years of experience (called the Rubin rates) to determine a reasonable rate for the area. But although class counsel work at Cincinnati law firms, the court decided to depart from these rates, commenting that "the practice of law has become an increasingly national practice." R. 155, Pg. ID 6210. The district court then noted that each billing attorney had submitted an affidavit describing his or her background, billing rate, and involvement in the case. And based on these affidavits, the court decided to split the difference between the Rubin rates and the requested rates to "reflect[] the national practice and experience" of class counsel. *Id.* at 6213. As a result, a majority of the attorneys received rates of around $500 per hour and the most senior attorneys received rates exceeding $600 per hour.

There are two basic problems with this reasoning. First, it's called the "community market rule" for a reason: the relevant inquiry is what billing rates are required "to encourage competent lawyers *within the relevant community* to undertake legal representation." *Hadix*, 65 F.3d at 536 (emphasis added); *see also Gonter*, 510 F.3d at 618 (explaining that a reasonable billing rate is "the market rate in the venue sufficient to encourage competent representation"). Indeed, lawyers must make a specific showing of necessity and reasonableness in order to recover fees as "out-of-town specialist[s]." *Ne. Ohio Coal.*, 831 F.3d at 716. And here class

counsel would be hard pressed to make such a showing since they are very much in-town attorneys. Local lawyers litigating a case in a local courthouse should receive local billing rates. The district court erred when it concluded otherwise.

Second, the district court erred when it determined the billing rates based on class counsel's affidavits. Again, the lawyer seeking fees has the burden to show the reasonableness of his billing rate with something "*in addition* to the attorney's own affidavits." *Blum*, 465 U.S. at 895 n.11 (emphasis added); *see also, e.g.*, *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244–45 (4th Cir. 2009). And this case illustrates the wisdom of that requirement. At least as to the prevailing market rates, many of the affidavits did nothing more than assert the attorney's own billing rate and the Rubin rate—the former often significantly higher than the latter. The affidavits thus shed little light on what would be a reasonable billing rate in this case. *See Gonter*, 510 F.3d at 618 (explaining that a reasonable rate "is not necessarily the exact value sought by a particular firm").

In fact, class counsel's own affidavits undercut the reasonableness of their requested rates. That's because attorneys with similar levels of experience often reported vastly differently billing rates, and sometimes attorneys with *fewer* years of experience reported significantly *higher* billing rates than those with more experience. Some examples:

- An attorney with seventeen years of experience reported a billing rate of $280 per hour, while two attorneys with sixteen years of experience reported rates of $475 and $650 per hour, respectively.

- An attorney with thirty-one years of experience reported a billing rate of $465 per hour, while an attorney with twenty-four years of experience reported a rate of $595 per hour.

- An attorney with twelve years of experience reported a billing rate $450 per hour, while an attorney from the same law firm with nine years of experience reported a billing rate of $530 per hour.

Neither class counsel nor the district court explained these discrepancies—*i.e.*, by unique expertise or the like. They also failed to explain why the lower billing rates wouldn't have been "sufficient to encourage competent representation" in this case. *Gonter*, 510 F.3d at 618.

Of course, some clients could be happy to pay above-market rates—especially if they thought it would secure them the highest level of representation. But again, "reasonable" fees are very "different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region." *Ne. Ohio Coal.*, 831 F.3d at 716 (cleaned up); *see also Hadix*, 65 F.3d at 535 (explaining that reasonable fees are meant to guarantee litigants "competent counsel," not the "best counsel in the country"). And class counsel have given us little basis to find the rates awarded here reasonable.

In an attempt to salvage the district court's analysis, class counsel point out that they also submitted an affidavit from a prominent law professor about the reasonableness of their fees. Yet the district court never cited this affidavit—and for good reason. The affidavit concluded that the requested rates were reasonable based on the fees charged in bankruptcy and class-action litigation conducted in the Southern District of New York. As comparators, the affidavit used the billing rates of some of the most prominent law firms in the country, such as Wachtell, Lipton, Rosen & Katz; Sullivan & Cromwell; and Davis Polk & Wardwell. But such comparisons tell us little—if anything—about the appropriate billing rates for a case litigated by three law firms in the Southern District of Ohio.

For its part, Vita-Mix contends that the district court also abused its discretion when it used billing rates from 2018 rather than 2016 because most of the litigation occurred during the earlier period. But we have repeatedly said that district courts may use the later rates so long as they ultimately result in a reasonable fee. *See, e.g.*, *Gonter*, 510 F.3d at 617. And because the district court must recalculate the billing rates anyway, we can leave this issue to the court on remand.

2.

The district court next abused its discretion when it used an upward multiplier. The court enhanced the original lodestar calculation by seventy-five percent after it analyzed the twelve factors laid out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). But in doing so, the court skipped over a crucial question: whether this case involves "rare and exceptional circumstances." *Perdue*, 559 U.S. at 552 (cleaned up).

The Supreme Court explained the relevant analysis in *Perdue*. That case reaffirmed that district courts may enhance an award of attorney's fees under a fee-shifting statute. *Id.* at 546. But the Court stressed that this should happen only in "rare and exceptional" circumstances and only when the lawyer seeking fees has provided "specific evidence that the lodestar fee would not have been adequate to attract competent counsel." *Id.* at 554 (cleaned up). The Court also emphasized that enhancements should not be awarded based on factors already "subsumed in the lodestar." *Id.* at 553.

Applying this framework, *Perdue* identified three circumstances in which an enhancement might be appropriate: (1) when the method used to determine the billing rate "does not adequately measure the attorney's true market value"; (2) when the litigation involved "an extraordinary outlay of expenses" and was "exceptionally protracted"; and (3) when there was an "exceptional delay in the payment of fees." *Id.* at 554–56; *see also id.* at 561 (Thomas, J., concurring) ("[C]areful readers will observe the precise limitations that the Court imposes on the availability of such enhancements."); *H.D.V.- Greektown, LLC v. City of Detroit*, 774 F. App'x 968, 972–73 (6th Cir. 2019) (per curiam). The clear takeaway is that district courts should award enhancements "only in the rarest circumstances." *Perdue*, 559 U.S. at 560 (Kennedy, J., concurring).

To be sure, this case involves a fee-shifting provision in a settlement agreement rather than a statute. But for our purposes, that's a distinction without a difference. The settlement agreement allows class counsel to seek attorney's fees under Civil Rules 23(h) and 54(d)(2), which in turn provide for "reasonable" fees. And the Supreme Court has repeatedly told us that the lodestar calculation "presumptively" yields a "reasonable" fee. *Perdue*, 559 U.S. at 552 (collecting cases). Indeed, the Court has called that presumption "a strong one." *Id.* (cleaned up). Class counsel hasn't given us any reason to think that this presumption disappears just because fees are shifted pursuant to a contract rather than a statute. *See In re Home Depot Inc.*, 931 F.3d 1065, 1084–86 (11th Cir. 2019).

It's also true that courts have sometimes declined to extend the *Perdue* framework outside the context of fee-shifting statutes. For instance, some courts have used multipliers more liberally in so-called common-fund cases—those in which fees are paid out of a pool of money

shared by the class members rather than by the defendant directly. *See* 5 Rubenstein et al., *supra*, § 15:91 (collecting cases). Some courts have also declined to extend *Perdue* to a specific attorney's fees provision in the Bankruptcy Code. *See* 11 U.S.C. § 330(a); *In re Mkt. Ctr. E. Retail Prop., Inc.*, 730 F.3d 1239, 1247–49 (10th Cir. 2013); *In re Pilgrim's Pride Corp.*, 690 F.3d 650, 664–67 (5th Cir. 2012). But these cases largely turn on distinctions not present here—for instance, between who must pay the fees (the defendant versus the other class members) and between what the relevant fees provisions say ("reasonable" by itself versus "reasonable" with enumerated factors). *See Home Depot*, 931 F.3d at 1085–86; *Pilgrim's Pride Corp.*, 690 F.3d at 665–66. So whatever their merit, their reasoning doesn't counsel a different outcome.

The district court recognized that *Perdue* might apply in this case, but did not make a finding that this was the "rare and exceptional case" that justified a multiplier. And for good reason, this case is simply not that rare (or for that matter exceptional). None of the three *Perdue* factors were met. Thus, no multiplier is justified in this case.

3.

The district court also abused its discretion as to the reasonableness of the attorney's fees.

*Rejected Fees Settlement.* The district court first erred when it failed to consider Vita-Mix's offer under Civil Rule 68 to settle the attorney's fees dispute for $3.1 million. Again, class counsel are entitled only to "reasonable" fees, and it's unreasonable for an attorney "to keep his meter running" after his client has been compensated and he's received an offer of reasonable fees. *Lee v. Thomas & Thomas*, 109 F.3d 302, 305 (6th Cir. 1997); *cf. McKelvey v. Sec'y of U.S. Army*, 768 F.3d 491, 495 (6th Cir 2014). At that point, further legal work is little more than "economic waste." *Lee*, 109 F.3d at 306.

This case illustrates the problem. After class counsel rejected the settlement offer, the parties litigated the issue of attorney's fees for another twenty-one months. During that period, the attorneys for both sides spent hundreds of hours of their own time (and likely the district court's) on the fees litigation. And if the proposed settlement was reasonable, it's hard to see the value of all this litigation. The waste would be even more apparent if class counsel had received

a final award that was *less* than the settlement offer.  *See McKelvey*, 768 F.3d at 495; *Lee*, 109 F.3d at 306.

It's true that the district court ultimately awarded class counsel more in attorney's fees than Vita-Mix offered in its proposed settlement ($3.9 million versus $3.1 million).  But as already explained, the court's award likely overstates the proper fees award.  Even if you just eliminate the multiplier, class counsel would have received only $2.2 million (much less than the proposed settlement).  And even that figure overstates the relevant amount because it includes the hundreds of hours class counsel worked *after* they rejected the proposed settlement.

On remand, the district court should ask whether $3.1 million was a reasonable (or frankly generous) fees award at the time Vita-Mix made the settlement offer.  If it was, then the court should exclude any hours that class counsel worked after they rejected the settlement.  *See Lee*, 109 F.3d at 305–07.

*Value of the Class Settlement.*  The district court also erred when it analyzed the value of the settlement for the class.  Again, "the most critical factor" when it comes to the reasonableness of a fees award "is the degree of success obtained."  *Hensley*, 461 U.S. at 436; *McKelvey*, 768 F.3d at 495.  And just as importantly, trial courts must "provide a reasonably specific explanation" of this factor to allow for "adequate appellate review."  *Perdue*, 559 U.S. at 558.

The problem here is that the district court failed to make any specific findings about the value of the settlement—despite the parties presenting evidence on the issue.  The court refused to make any findings about the value of the replacement blade assembly and refused even to consider evidence about the coupon redemption rates.  The only thing the court found was that the value of the settlement was "very good."  R. 166, Pg. ID 6966.  And the only reasons it offered were (1) that certain class members had a choice between two different forms of relief (the gift cards and the replacement blade assembly) and (2) that the value of the gift cards was not an "illusory amount."  *Id.* at 6964–65.

That explanation was insufficient. The mere fact that a settlement provides various forms of relief—let alone a "choice" of relief—doesn't show that the underlying relief is meaningful. *See In re Dry Max Pampers Litig.*, 724 F.3d 713, 718–20 (6th Cir. 2013). And we know from experience (and Congress) that the face value of a coupon may be quite different from its actual value to class members—even if the coupon is for more than an "illusory amount." *See* 28 U.S.C. § 1712; *Redman*, 768 F.3d at 633–35. In short, the district court's analysis provides us little basis to review the success obtained in this case. *See Perdue*, 559 U.S. at 558.

On remand, the district court should carefully consider the value of the settlement and then provide a reasonably specific explanation of its findings. The most straightforward way to do this would be to consider the parties' own evidence about the value of the settlement—including the coupon redemption rate. As explained above, CAFA doesn't require district courts to calculate attorney's fees based on the percentage method in every coupon settlement. Yet redemption rates should still play a crucial role in assessing the reasonableness of a fees award. *See Galloway*, 833 F.3d at 975; *Redman*, 768 F.3d at 633–35. That is not to rule out the possibility that a court might be able to determine the reasonableness of an award—and specifically the "success obtained"—without reference to the redemption rates. *Cf. In re Easysaver Rewards*, 906 F.3d at 759 n.12. But suffice it to say that neither class counsel nor the district court have shown that this is such a case.

In a related vein, the district court should consider the various pre-lawsuit measures that Vita-Mix took to address the flecking problem. The company says that it offered class members significant relief even before any of this litigation. And if that's true, then the value assigned to the settlement should reflect that fact. A lawsuit hasn't "obtained" much success if it simply causes the defendant to switch from offering one form of relief to another of similar value. *Cf. In re Dry Max Pampers*, 724 F.3d at 719.

The district court recognized that there was a factual dispute on this point but declined to "delve" into the details. R. 166, Pg. ID 6965. Instead, the court simply asserted that it disagreed with Vita-Mix's characterization of the pre-lawsuit relief. But that bare assertion gives us no basis to review the district court's exercise of discretion. *See Perdue*, 559 U.S. at 558. On remand, the court should reconsider this issue and, if it reaches the same conclusion, explain *why*

it disagrees with the company's characterization so that we may effectively review that finding in any future appeal.

In saying all this, we haven't forgotten that the lodestar calculation "presumptively" yields a reasonable fees award, *Perdue*, 559 U.S. at 552, or that our circuit has said that downward adjustments should be used with care, *see Waldo v. Consumers Energy Co.*, 726 F.3d 802, 822 (6th Cir. 2013). But at the same time, our court has continued to look at the success obtained to determine the reasonableness of fees awards. *See, e.g.*, *Dean v. F.P. Allega Concrete Constr. Corp.*, 622 F. App'x 557, 559 (6th Cir. 2015); *Green Party of Tennessee v. Hargett*, 767 F.3d 533, 553–54 (6th Cir. 2014). And on the record before us, we have little basis to evaluate this factor. On top of everything else, then, this omission also calls for a remand so that the district court can conduct the required analysis.

\*\*\*

For all these reasons, the district court abused its discretion when it calculated the award of attorney's fees. On remand, the court should recalculate the award in light of this opinion. We leave to the district court's discretion whether to permit new evidence. *See Carter-Jones Lumber Co. v. LTV Steel Co.*, 237 F.3d 745, 751 (6th Cir. 2001).

D.

Finally, Vita-Mix argues that the district court erred when it ordered post-judgment interest on the award of attorney's fees under 28 U.S.C. § 1961.

*Jurisdiction.* As an initial matter, we asked the parties to brief whether the district court had jurisdiction to order post-judgment interest. The potential problem is that the court addressed post-judgment interest only after Vita-Mix had filed a notice of appeal from the underlying fees award. And the normal rule is that, once a party files a notice of appeal, a district court loses jurisdiction over any aspect of the case at issue in the appeal. *See, e.g.*, *United States v. Carman*, 933 F.3d 614, 617 (6th Cir. 2019).

But we need not decide whether the district court had jurisdiction to award post-judgment interest because this court has appellate jurisdiction to address the issue. Think of it this way:

either Vita-Mix's first notice of appeal (from the award of attorney's fees) divested the district court of jurisdiction and gave us jurisdiction over the entire award (including the appropriate amount of interest) or its second notice of appeal (from the award of post-judgment interest) gave us jurisdiction over the later order. On either view, our jurisdiction is secure. And because the district court must recalculate the post-judgment interest in light of any changes to its award of attorney's fees, we will vacate the interest award and thus cure any jurisdictional impropriety in the court's order. *See* 28 U.S.C. § 2106. With that wrinkle resolved, we can turn to the merits of the challenge.

*Post-Judgment Interest.* Section 1961(a) provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." Like several other circuits, this court has held that the phrase "any money judgment" in § 1961 includes a judgment awarding attorney's fees. *See Associated Gen. Contractors of Ohio, Inc. v. Drabik*, 250 F.3d 482, 485 (6th Cir. 2001) (collecting cases). And here no one disputes that the district court entered a "judgment" awarding attorney's fees to class counsel. So counsel would seem to be entitled to post-judgment interest on those fees.

It's true that a few district courts have drawn a distinction between court-approved settlements (like the one we have here) and other "money judgments." *See, e.g., Padberg v. McKechnie*, No. CV-00-3355-RJD, 2007 WL 951929, at *1 (E.D.N.Y. Mar. 27, 2007); *Reynolds v. Ala. Dep't of Transp.*, No. 285-CV-665-MHT, 2006 WL 3063463, at *1–3 (M.D. Ala. Oct. 27, 2006); *Isaiah v. City of New York*, No. 96 CIV. 1323 BSJ, 1999 WL 38846, at *1 (S.D.N.Y. Jan. 29, 1999); *Kincade v. Gen. Tire & Rubber Co.*, 540 F. Supp. 115, 120–21 (W.D. Tex. 1982), *rev'd on other grounds*, 716 F.2d 319 (5th Cir. 1983). These decisions largely reason that court-approved settlements don't involve a "money judgment . . . *recovered* in a district court" because neither a judge nor a jury adjudicated the merits of the suit. *See, e.g., Reynolds*, 2006 WL 3063463, at *1 (emphasis added).

Yet that reasoning requires a cramped reading of the term "recovered." In the sense used here, parties "recover" a "money judgment" when they obtain one in their favor. *See, e.g., Black's Law Dictionary* 1440 (4th ed. 1951) (defining "[r]ecover" as "to get or obtain again" and, "[i]n a narrower sense, to be successful in a suit, to collect or obtain [an] amount, to have

judgment, to obtain a favorable or final judgment, to obtain in any legal manner in contrast to voluntary payment"); *Webster's New International Dictionary of the English Language* 2081 (2d ed. 1949) (noting similar definitions). And parties can obtain a judgment in their favor even when that judgment arises from a voluntary settlement rather than a decision on the merits. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii); Fed. R. Civ. P. 68(a). Nothing in the term "recovered" requires a merits adjudication of the suit. *Cf. Waggoner v. R. McGray, Inc.*, 743 F.2d 643, 644 (9th Cir. 1984) (per curiam) ("[Section 1961] does not differentiate between stipulated judgments and other judgments.").

Indeed, the whole point of § 1961 is to ensure that a successful party receives compensation for any delay in the time it takes for the opposing party to pay up. "Because a dollar today is worth more than a dollar in the future, the only way a party can be made whole is to grant interest from the time of the award[.]" *Drabik*, 250 F.3d at 485. And a contrary rule would incentivize the other party to delay payment as much as possible in order to reduce the value of the original judgment. *See Cappiello v. ICD Publ'ns, Inc.*, 720 F.3d 109, 114 (2d Cir. 2013). These concerns apply no less to settlements than cases adjudicated on the merits.

Nor does it matter that settlements are contracts. Some have reasoned that, because § 1961 uses mandatory language ("[i]nterest shall be allowed"), it shouldn't apply to voluntary agreements such as settlements. *See Reynolds*, 2006 WL 3063463, at *2–3. But there are two problems with this reasoning. First, § 1961 simply asks whether a "money judgment" was "recovered" in federal court; it doesn't distinguish between money judgments based on contracts and those based on merits decisions. Second, several of our sister circuits have said that parties may generally contract around § 1961 so long as they do so through express terms in their agreement. *See, e.g.*, *FCS Advisors, Inc. v. Fair Fin. Co.*, 605 F.3d 144, 147 (2d Cir. 2010); *Kanawha-Gauley Coal & Coke Co. v. Pittston Minerals Grp., Inc.*, 501 F. App'x 247, 254 (4th Cir. 2012) (per curiam); *In re Lift & Equip. Serv., Inc.*, 816 F.2d 1013, 1018 (5th Cir. 1987); *Cent. States, Se. & Sw. Areas Pension Fund v. Bomar Nat'l, Inc.*, 253 F.3d 1011, 1020 (7th Cir. 2001); *In re Riebesell*, 586 F.3d 782, 794 (10th Cir. 2009); *see also Jack Henry & Assocs., Inc. v. BSC, Inc.*, 753 F. Supp. 2d 665, 667–72 (E.D. Ky. 2010). And if that's true, our reading of § 1961 does little to undermine the freedom-of-contract principles underlying settlements. But

since Vita-Mix hasn't argued that the parties contracted around § 1961 in their settlement agreement, we can leave this issue for another day.

In sum, the district court correctly held that § 1961 applies in this case.  On remand, the court should recalculate the post-judgment interest in light of any changes to its fees award.

*** 

We vacate the district court's award of attorney's fees as well as its award of post-judgment interest and remand for further proceedings consistent with this opinion.